No. 25-2107

## IN THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

ARLINGTON SCHOOL BOARD,

*Plaintiff-Appellant*,

v.

LINDA MCMAHON, IN HER OFFICIAL CAPACITY AS SECRETARY OF EDUCATION OF THE UNITED STATES, AND THE UNITED STATES DEPARTMENT OF EDUCATION,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Eastern District of Virginia,
1:25-cv-01434-RDA-LRV,
Hon. Rossie D. Alston, Jr.

### Appellant's Emergency Motion for Injunction Pending Appeal

<table>
<tr>
<td valign="top">

Breanna Smith-Bonsu
Chloe Smeltzer
WILLKIE FARR &
GALLAGHER LLP
300 N. LaSalle Dr.
Chicago, IL 60654
312-728-9000

</td>
<td valign="top">

Timothy Heaphy
*Counsel of Record*
Joshua N. Mitchell
Fiona Carroll
Lindsay Hemminger
WILLKIE FARR &
GALLAGHER LLP
1875 K Street Northwest
Washington, DC 20006
202-303-1000
theaphy@willkie.com

</td>
</tr>
</table>

*Counsel for Plaintiff-Appellant*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................ii

INTRODUCTION .............................................................................1

BACKGROUND ...............................................................................4

  A. Factual background ..................................................................4

  B. Procedural background ...........................................................7

LEGAL STANDARD .......................................................................8

ARGUMENT ....................................................................................9

I.  APS's claims lie exclusively within Article III courts' jurisdiction. ....9

  A. The Court of Federal Claims' jurisdiction does not extend to APA
     claims, which § 1683 expressly allows. ...........................................10

  B. Congress identified claims for funds improperly denied under Title
     IX as "relief other than money damages." ......................................12

  C. The U.S. Supreme Court's emergency-docket decisions are not
     relevant where Congress has expressly assigned jurisdiction. .......16

II. APS satisfies the injunction factors. ...................................................17

  A. APS is likely to succeed on the merits.............................................17

    1.   APS's APA claims are likely to succeed....................................18

    2.   APS's declaratory judgment claim is likely to succeed.............23

  B. APS will suffer irreparable harm absent injunctive relief.............25

  C. The balance of equities and public interest favor APS...................26

CONCLUSION ....................................................................................27

# TABLE OF AUTHORITIES

**Cases**

*Arch Mineral Corp. v. Babbitt,*
  104 F.3d 660 (4th Cir. 1997) ................................................................ 19

*Ark. Game & Fish Comm'n v. United States,*
  568 U.S. 23 (2012) ................................................................................ 12

*Bennett v. Spear,*
  520 U.S. 154 (1997) .............................................................................. 18

*Bowen v. Massachusetts,*
  487 U.S. 879 (1988) .............................................................................. 10

*Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz,*
  601 U.S. 42 (2024) ................................................................ 12, 14, 16

*Doe v. S. Carolina,*
  2025 WL 2375386 (4th Cir. Aug. 15, 2025) ........................................ 6

*FCC v. Prometheus Radio Project,*
  592 U.S. 414 (2021) .............................................................................. 19

*Freeman v. Cavazos,*
  923 F.2d 1434 (11th Cir. 1991) ........................................................... 13

*Freeman v. Quicken Loans, Inc.,*
  566 U.S. 624 (2012) .............................................................................. 16

*Friends of Back Bay v. U.S. Army Corps of Eng'rs,*
  681 F.3d 581 (4th Cir. 2012) ............................................................... 20

*Frozen Food Express v. United States,*
  351 U.S. 40 (1956) ................................................................................ 19

*Grimm v. Gloucester Cnty. Sch. Bd.,*
  972 F.3d 586 (4th Cir. 2020) ..................................................... passim

*Harris v. Wood,*
  888 F. Supp. 747 (W.D. Va. 1995) ...................................................... 27

*King v. St. Vincent's Hosp.,*
  502 U.S. 215 (1991) .............................................................................. 12

*Kirk v. Comm'r of SSA,*
  987 F.3d 314 (4th Cir. 2021) ............................................................... 20

*Lipsett v. Univ. of P.R.*,
  864 F.2d 881 (1st Cir. 1988) .............................................................. 15

*Maine v. U.S. Dep't of Agric.*,
  778 F. Supp. 3d 200 (D. Me. 2025) ............................................... 15, 17

*Marbury v. Madison*,
  5 U.S. (1 Cranch) 137 (1803) ........................................................... 21

*Me. Cmty. Health Options v. United States*,
  590 U.S. 296 (2020) ..................................................................... 10, 11

*Mountain Valley Pipeline, LLC v. W. Pocahontas Props. Ltd. P'ship*,
  918 F.3d 353 (4th Cir. 2019) ............................................................ 26

*Nat'l Council of Agric. Emps. v. U.S. Dep't of Labor*,
  143 F.4th 395 (D.C. Cir. 2025)......................................................... 18

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
  567 U.S. 519 (2012) ..................................................................... 21, 22

*New York v. United States*,
  505 U.S. 144 (1992) ......................................................................... 23

*Nken v. Holder*,
  556 U.S. 418 (2009) ......................................................................... 26

*Palmore v. United States*,
  411 U.S. 389 (1973) ......................................................................... 12

*Pappas v. FCC*,
  807 F.2d 1019 (D.C. Cir. 1986) ........................................................ 21

*Pres. & Fellows of Harvard Coll. v. U.S. Dep't of Justice*,
  — F. Supp. 3d —,
  2025 WL 2528380 (D. Mass. Sept. 3, 2025) ........................................ 5

*S. Dakota v. Dole*,
  483 U.S. 203 (1987) ......................................................................... 22

*Salomon & Ludwin, LLC v. Winters*, No. 24-1728,
  2025 WL 2314652 (4th Cir. Aug. 12, 2025)........................................ 18

*Sustainability Institute v. Trump*,
  2025 WL 1587100 (4th Cir. June 5, 2025) .......................................... 17

*Tandon v. Newsom*,
  593 U.S. 61 (2021) ........................................................................... 17

iii

*Tenn. v. Dep't of Educ.*,
  104 F.4th 577 (6th Cir. 2024) ...................................................11, 13, 15

*Todd v. United States*,
  386 F.3d 1091 (Fed. Cir. 2004) ...................................................10, 11

*United States v. Testan*,
  424 U.S. 392 (1976) ...........................................................................10

*Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*,
  386 F.3d 581 (4th Cir. 2004)..........................................................23, 24

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) .................................................................................9

**Statutes**

20 U.S.C. § 1234g..................................................................................13

20 U.S.C. § 1683............................................................................ passim

28 U.S.C. § 1331..................................................................................24

28 U.S.C. § 2201..................................................................................23

5 U.S.C. § 551 ......................................................................................18

5 U.S.C. § 701 ......................................................................................15

5 U.S.C. § 702 ..........................................................................10, 14, 15

5 U.S.C. § 706 ..........................................................................19, 21, 23

**Rules**

4th Cir. R. 27.........................................................................................1

**Regulations**

2 C.F.R. § 200.208.................................................................................6

2 C.F.R. § 3474.10.................................................................................6

Arlington Pub. Schs. J-2 PIP-2 .............................................................4

**Constitutional Provisions**

U.S. CONST. amend. X............................................................................22

U.S. CONST. art. I, § 8, cl. 1 ..................................................................22

U.S. CONST. art. II, § 3 .................................................................. 21

U.S. CONST. art. III, § 1 ................................................................ 12

VA. CONST. art. VIII, § 1 .............................................................. 26

# INTRODUCTION[1]

Defendants demand that Plaintiff Arlington School Board, which operates Arlington Public Schools (APS), violate binding Fourth Circuit law interpreting Title IX—law that this Court has consistently reaffirmed, including as recently as a few weeks ago.  Because APS has refused to follow Defendants' unlawful directive to restrict students' access to facilities based on the sex assigned them at birth, Defendants have illegally and improperly designated APS as "high-risk" for purposes of receiving funds appropriated by Congress.  Defendants demand that APS violate Title IX as a non-negotiable, overarching condition on the continued receipt of those funds.  Their action in imposing the "high-risk" status designation is illegal and unreasonable, and jeopardizes millions of dollars that provide vital services to tens of thousands of APS students.

APS sought declaratory and injunctive relief from those orders in the Eastern District of Virginia.  But because one result of that relief would restore APS's access to funds, the district court—relying on unclear and inapposite emergency-docket guidance from a fractured U.S.

---

[1] Defendants' counsel have been notified that APS is filing this motion. Defendants' counsel have indicated that Defendants oppose this motion and intend to file a response.  *See* 4th Cir. R. 27(a).

Supreme Court and on the decision of this Court relying on that guidance—ruled that APS's claims lay within the exclusive jurisdiction of the Court of Federal Claims. It denied relief and dismissed APS's complaint.

That was error. Under Title IX's express terms, Article III courts have jurisdiction of this dispute. First, Congress expressly made Title IX funding challenges subject to judicial review under the Administrative Procedure Act ("APA")—*i.e.*, review by an Article III court. Second, the APA's waiver of sovereign immunity does not extend to money damages. Therefore, under basic rules of statutory construction, claims asserting that funding has been improperly withheld under Title IX because of an arbitrary status designation by the Department of Education are *not* claims for "money damages"—and thus do not fall within the Court of Federal Claims' narrow jurisdiction. The U.S. Supreme Court's emergency-docket orders do not involve the judicial-review provision of Title IX and have no application here, where Congress has plainly defined the courts' jurisdiction.

The district court's dismissal of APS's motion effectively gives APS no remedy at law to protect against an arbitrary and capricious denial of

federal funds. APS sued in the district court to *prevent* the devastating consequences of those funds' unavailability because of the "high-risk" designation. Absent this Court's intervention, the district court's erroneous ruling will leave APS with no cognizable claim for the irreparable harm that will ensue from Defendants' action.

On the merits, APS has demonstrated below that a preliminary injunction should issue. APS is likely to succeed on the merits of its claims because this Court's interpretation of Title IX binds them. APS will likely suffer irreparable harm by being unable to provide crucial services to students absent the funding Defendants seek to withhold. Both the public interest and the balance of equities favor APS, which has a duty under Commonwealth law to provide a free and comprehensive education. Defendants have no protectable interest in forcing APS to violate federal law to do so.

APS respectfully requests that the Court reverse the district court's erroneous jurisdictional ruling; enjoin Defendants from mis-designating APS as "high-risk"; and remand to the district court.

## BACKGROUND

### A.    Factual background

***The parties.*** APS is a northern Virginia school division responsible for administering public schools in Arlington County. R.1 ¶ 10.[2] Defendant-Appellee Linda McMahon is the U.S. Secretary of Education, head of Defendant-Appellee the U.S. Department of Education. *Id.* ¶¶ 11, 12.

**Grimm *and APS policy.*** In *Grimm v. Gloucester County School Board*, 972 F.3d 586 (4th Cir. 2020), this Court held that both the Equal Protection Clause and Title IX compel access to facilities that correspond with students' gender identities. Accordingly, APS's facilities-access policy allows transgender students to use the sex-segregated facilities—including locker rooms and restrooms—that correspond with their gender identities. *See* Arlington Pub. Schs. J-2 PIP-2 (APS R.1 ¶ 40 et seq.).

Virginia's model policies also acknowledge *Grimm*'s binding federal requirements. *See* https://tinyurl.com/25upya54.

---

[2] Citations to "R." are to the record in 25-cv-01434.

***The Department of Education's pretextual "investigation."***

On February 12, 2025, the Department of Education's Office for Civil Rights ("OCR") issued a notification letter to APS, along with four other northern Virginia school divisions, asserting that a complaint had been filed alleging that APS violated Title IX by providing transgender students with access to sex-segregated facilities based on their gender identities. R.1 ¶¶ 41, 44. This complaint was originally generated by America First Legal, an outside organization that has brought Title IX complaints against school districts and universities to interfere with transgender individuals' access to facilities and athletics programs. *See id.* ¶ 42. APS's response to the OCR inquiry cited both *Grimm* and the Virginia model policies as the bases for its policy. *Id.* ¶ 43.

OCR's investigation was not a good-faith attempt to enforce the law but a pretextual ploy to subvert it. *Cf. Pres. & Fellows of Harvard Coll. v. U.S. Dep't of Justice*, — F. Supp. 3d —, 2025 WL 2528380, at *25 (D. Mass. Sept. 3, 2025) ("the government-initiated onslaught against Harvard was much more about promoting a governmental orthodoxy in violation of the First Amendment than about anything else, including fighting antisemitism"). On July 25, OCR issued a Findings Letter

asserting that APS's policy violates Title IX. R.1 ¶ 44. Attached to the Findings Letter was a draft Resolution Agreement, demanding that APS alter its policies to conform to OCR's erroneous interpretation of Title IX, which requires treating all individuals exclusively according to the sex assigned them at birth. *Id.* OCR imposed an August 15 deadline for compliance. *Id.* ¶ 46.

On August 15, this Court issued its opinion in *Doe v. South Carolina*, in which it repeatedly and succinctly reaffirmed that *Grimm* remains the law of this Circuit. 2025 WL 2375386, *8 (4th Cir. Aug. 15, 2025). That same day, APS again told Defendants that it was bound by *Grimm* and could not lawfully modify its policy as OCR demands. R.1 ¶ 47. On the following Monday, APS filed a supplemental letter bringing *Doe* to the Defendants' attention. *Id.* at ¶ 48.

***The "high-risk" designation.*** On August 19, despite the clear authority in *Grimm*, Defendants issued a letter designating APS as a "high-risk" entity under 2 C.F.R. §§ 200.208 and 3474.10, asserting that its compliance with this Court's binding interpretation was instead "noncompliance with Title IX." R.1-3.

In this letter, Defendants imposed "specific conditions on [APS's] use of funds in all grants it receives from the Department." *Id*. Among other requirements, Defendants demanded that APS "submit plans for compliance with all federal laws" and "submit a corrective action plan … that shows all steps taken to be in compliance with the applicable laws." *Id*. at 3–4. They also required APS to "provide detailed information that identifies and discusses the steps [APS] will take to ensure that grant funds will be spent in accordance with all appliable [*sic*] laws." *Id*.

APS's federal grants were "placed on a reimbursement method of payment," conditioning payment on APS's "adherence to [the Department's interpretation of] all pertinent federal civil rights laws that apply to your division's grants and subgrants." *Id*. In effect, the "high-risk" designation letter requires that APS restrict students' facilities access to the sex assigned them at birth—a policy change that would directly violate *Grimm*.

## B.  Procedural background

On August 29, 2025, APS and the Fairfax County School Board (together with APS, the "School Districts") filed separate complaints asserting claims for relief under the APA, the Declaratory Judgment Act,

7

and the U.S. Constitution. *See generally* R.1. The primary relief the School Districts sought was (1) a declaratory judgment stating that *Grimm* binds them, and (2) a prospective injunction requiring that Defendants de-designate the School Districts from "high-risk" status and remove the reimbursement-only bar to their use of funds. *Id.* The School Districts also sought preliminary injunctions. *See* R.2.

On September 5, the district court issued an order denying the School Districts' motions and dismissing the School Districts' complaints for a lack of jurisdiction. R.28 at 12. Purporting to follow U.S. Supreme Court emergency-docket guidance, the district court concluded that the School Districts' equitable claims were disguised claims for "money damages" and thus subject to the Court of Federal Claims' exclusive jurisdiction. R.28 at 4–11. The district court nevertheless "unconditionally recognize[d] that *Grimm* 'remains the law of this Circuit.'" R.28 at 4.

APS timely appealed. R.29.

## LEGAL STANDARD

Although a preliminary injunction is an extraordinary remedy, its award is justified where a party shows that it is likely to succeed on the

underlying merits, that it is likely to suffer irreparable harm absent an injunction, that the balance of equities tips in the party's favor, and that an injunction is within the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Certainty of either an irreparable injury or of success on the merits is not required; only a likelihood. *Id.* at 22.

## ARGUMENT

### I. APS's claims lie exclusively within Article III courts' jurisdiction.

Title IX contains a judicial-review provision that incorporates the APA, and thus relies on the Article III courts and the APA's waiver of sovereign immunity. *See* 20 U.S.C. § 1683; R.26 at 6, 8, 10. The district court nevertheless concluded that "here the action is subject to judicial review in the Court of Federal Claims," and on that basis rejected "Plaintiffs' reliance on 20 U.S.C. § 1683." R.28 at 8. This question-begging conclusion ignores Title IX's explicit provision of an APA cause of action for claims of improper denial of funds due to the government's misinterpretation of Title IX. The district court's jurisdictional ruling is error.

**A.    The Court of Federal Claims' jurisdiction does not extend to APA claims, which § 1683 expressly allows.**

The answer to whether jurisdiction of this case lies in Article III courts is on the face of the relevant statutes.  The Court of Federal Claims' "jurisdiction is statutorily granted and is to be strictly construed." *Bowen v. Massachusetts*, 487 U.S. 879, 908 n.46 (1988).  "The jurisdiction of the Court of Federal Claims under the Tucker Act is 'limited to actual, presently due money damages from the United States.'" *Todd v. United States*, 386 F.3d 1091, 1093 (Fed. Cir. 2004) (quoting *United States v. Testan*, 424 U.S. 392, 398 (1976)).  As a result, the Court of Federal Claims lacks jurisdiction over APA claims because those claims *cannot* be claims for money damages.  5 U.S.C. § 702.

The Supreme Court recently recognized that "[t]he Tucker Act yields when the obligation-creating statute provides its own detailed remedies, or when the Administrative Procedure Act … provides an avenue for relief." *Me. Cmty. Health Options v. United States*, 590 U.S. 296, 323–24 (2020) (emphasis added).  That holding did not condition the Tucker Act yielding only where the APA provides *the exclusive* avenue for relief.  Having the APA as *an avenue* for relief suffices.

Here, Congress has expressly stated that the APA "provides an avenue for relief." *See id.*; 20 U.S.C. § 1683 ("any person aggrieved (including any State or political subdivision thereof and any agency of either) may obtain judicial review of such action in accordance with chapter 7 of title 5"); *Tenn. v. Dep't of Educ.*, 104 F.4th 577, 604 (6th Cir. 2024) ("The second sentence of § 1683[] … *provides one avenue to judicial review*[.]") (emphasis added). Accordingly, per the Supreme Court's recent precedent, the "Tucker Act yields" and the district court had jurisdiction of these claims. *Me. Cmty.*, 590 U.S. at 323–24.

Here, moreover, APS's claims are not for "actual, presently due money damages," *Todd*, 386 F.3d at 1093, but for the district court to *prospectively* require that Defendants not arbitrarily designate APS "high-risk" and condition the disbursement of funds on Defendants' erroneous understanding of Title IX. This litigation seeks to prevent imminent harm, not undo past harm by awarding money damages. The district court's flawed jurisdictional ruling leaves APS with no legal path to prevent an unlawful outcome—a result that Congress plainly sought to avoid in promulgating Title IX's judicial-review provision.

11

**B.      Congress identified claims for funds improperly denied under Title IX as "relief other than money damages."**

Congress sets the jurisdiction of all federal courts below the U.S. Supreme Court. *See* U.S. CONST. art. III, § 1; *Palmore v. United States*, 411 U.S. 389, 401 (1973) ("the task of defining [inferior courts'] jurisdiction[] was left to the discretion of Congress"). And only Congress—not the Courts—may waive the United States' sovereign immunity. *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 48 (2024) ("the power to waive the federal government's immunity is Congress's prerogative, not" the Judiciary's).

A "statute is to be read as a whole, … since the meaning of statutory language, plain or not, depends on context." *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991). Indeed, "the first rule of … statutory interpretation is: Read on." *Ark. Game & Fish Comm'n v. United States*, 568 U.S. 23, 36 (2012). Here, the district court read "not otherwise subject to judicial review" in 20 U.S.C. § 1683 and stopped reading— ignoring the context in which that language appeared.

Congress has explicitly provided that the APA is an appropriate mechanism for judicial review of agency actions terminating or refusing

12

to grant or continue funding based on an agency determination "of a failure to comply" with the requirements of Title IX or its implementing regulations:

> Any department or agency action taken pursuant to section 1682 of this title shall be subject to such judicial review as may otherwise be provided by law for similar action taken by such department or agency on other grounds. In the case of action, not otherwise subject to judicial review, terminating or refusing to grant or to continue financial assistance upon a finding of failure to comply with any requirement imposed pursuant to section 1682 of this title, any person aggrieved (including any State or political subdivision thereof and any agency of either) may obtain judicial review of such action in accordance with chapter 7 of title 5, and such action shall not be deemed committed to unreviewable agency discretion within the meaning of section 701 of that title.

20 U.S.C. § 1683.

The first sentence of § 1683 mandates that specific statutory schemes for review of particular agencies' actions are a litigant's first stop. "For example, some courts interpreting an identical judicial review provision in Title VI of the Civil Rights Act of 1964 say that the phrase 'as may otherwise be provided by law for similar action' can refer to 20 U.S.C. § 1234g." *Tennessee*, 104 F.4th at 604–05; *see Freeman v. Cavazos*, 923 F.2d 1434, 1440 (11th Cir. 1991) (holding that § 1234g, which channels judicial review directly into the Courts of Appeals, is "the

13

appropriate judicial review provision[] for the termination order in" certain ALJ proceedings). That is the context in which § 1683 speaks of "action[s] not otherwise subject to judicial review." It is not a clandestine diversion of Article III courts' jurisdiction to the Court of Federal Claims; it points instead to the narrow, agency- and circumstance-specific Article III challenges to administrative decisions referenced in the previous sentence.

For the rest of agency actions "terminating or refusing to grant or to continue financial assistance," Title IX directs "judicial review" under the APA. Because there is no "unmistakably clear" language indicating a separate waiver of sovereign immunity in § 1683, the proper interpretation is that Congress intended those challenges to make use of the APA's waiver. *See Kirtz*, 601 U.S. at 49.

The APA waives the United States' sovereign immunity only with respect to "[a]n action in a court of the United States seeking relief *other than money damages*." 5 U.S.C. § 702 (emphasis added). Had Congress meant to treat Title IX funding claims as claims for money damages that were nevertheless subject to the APA's waiver of immunity, it would have

14

done so expressly—in much the same way as § 1683 expressly directs a particular finding under a different section of the APA, § 701.

It follows, therefore, that an APA claim challenging an "action … terminating or refusing to grant or to continue financial assistance" is, in Congress's view, *not a claim for money damages.  See Lipsett v. Univ. of P.R.*, 864 F.2d 881, 885 n.6 (1st Cir. 1988) ("there is in Title IX … no *express* congressional authorization of private damages actions").  It is, instead, what APS said it is:  a claim for *prospective injunctive relief* under the APA.

Because APS's claims are not for money damages either in fact or in Congress's binding view, they are not within the Court of Federal Claims' jurisdiction, and thus "not otherwise subject to judicial review" there.  *See* § 1683.  Those claims lie instead within the jurisdiction of "court[s] of the United States" empowered to review agency actions under 5 U.S.C. § 702—including the district court. *Tennessee*, 104 F.4th at 604 ("The second sentence of § 1683 … says that after an administrative enforcement proceeding strips the recipient of its funding, the recipient can sue under the APA."); *Maine v. U.S. Dep't of Agric.*, 778 F. Supp. 3d 200, 226–27 (D. Me. 2025) (enjoining "freezing … funds" under Title IX:

"Consistent with the plain language of 20 U.S.C. § 1683 … the Court agrees with the Plaintiff that it has jurisdiction to review the disputed agency action").

The district court's contrary conclusion requires either reading the express cross-reference to the APA in § 1683 as meaningless surplusage or—even less permissibly—expanding the APA's waiver of sovereign immunity to incorporate claims for money damages. *See, e.g.*, *Freeman v. Quicken Loans, Inc.*, 566 U.S. 624, 635 (2012) (explaining the canon against surplusage); *Kirtz*, 601 U.S. at 48 (courts have no power to expand Congress's waivers of sovereign immunity). Because the district court's jurisdictional analysis was error, reversal is required.

## C. The U.S. Supreme Court's emergency-docket decisions are not relevant where Congress has expressly assigned jurisdiction.

Plain statutory language answers the jurisdictional question, and Congress—not the U.S. Supreme Court—is the master of the inferior courts' jurisdiction. Thus, the U.S. Supreme Court's opaque and contradictory emergency-docket decisions shunting certain federal-funding cases into the Court of Federal Claims—and this Court's decision in *Sustainability Institute v. Trump*, 2025 WL 1587100 (4th Cir. June 5,

2025), relying on those cases—are simply beside the point. The cases on which the district court relies (*see* R.28 at 4–8), do not involve § 1683 or similarly binding jurisdictional provisions. Accordingly, those cases are inapposite and do not justify abandoning the clear jurisdictional authority that governs Title IX cases. *See, e.g., Maine*, 778 F. Supp. 3d at 226–27 (rejecting jurisdiction of the Court of Federal Claims because § 1683 "makes clear that any person aggrieved by an agency action terminating … funding upon a finding of Title IX noncompliance" may obtain APA review).

## II. APS satisfies the injunction factors.

An injunction is appropriate here because APS satisfied the four traditional injunction elements. *See Tandon v. Newsom*, 593 U.S. 61, 64 (2021). APS sought injunctive relief below. *See generally* R.2. The district court improperly denied the motion.

### A. APS is likely to succeed on the merits.

APS claimed (1) that the Defendants' actions should be set aside under the APA; and (2) that declaratory judgment is warranted because APS's facilities-access policy comports with *Grimm*. A likelihood of success on *any* claim suffices for injunctive relief. *See Salomon &*

17

*Ludwin, LLC v. Winters*, No. 24-1728, 2025 WL 2314652, at *3 n.1 (4th Cir. Aug. 12, 2025).

### 1. APS's APA claims are likely to succeed.

#### a. *Defendants' actions are reviewable final agency actions.*

"[A]gency action includes the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13) (internal quotations omitted). An action is "final" when (1) it "mark[s] the consummation of the agency's decisionmaking process" and (2) is one "by which rights or obligations have been determined or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (cleaned up). Finality for the purpose of judicial review "entails a 'pragmatic' and 'flexible' inquiry." *Nat'l Council of Agric. Emps. v. U.S. Dep't of Labor*, 143 F.4th 395, 410 (D.C. Cir. 2025).

Here, Defendants' "high-risk" designation of APS (R.1-3), is "not … of a merely tentative or interlocutory nature" but reflects the conclusion of Defendants' decision-making process concerning specific conditions imposed on APS. *See id.* Moreover, Defendants' actions "determined" "rights or obligations," *Bennett*, 520 U.S. at 177–78, because those actions

18

"ha[d] an immediate and practical impact," *Frozen Food Express v. United States*, 351 U.S. 40, 43–44 (1956), requiring APS to rescind its policy in violation of federal law or lose access to federal funds Congress has appropriated.  As this Court has explained in assessing ripeness, "impos[ing] new conditions" even *absent* a "formal administrative order" is a final agency action. *Arch Mineral Corp. v. Babbitt*, 104 F.3d 660, 667 (4th Cir. 1997).  Here, Defendants have imposed those conditions through a formal administrative order.

**b. Defendants' actions are arbitrary, capricious, an abuse of discretion, and contrary to law.**  Defendants' actions reflect a clearly erroneous interpretation of binding law.  As even the district court "unconditionally recognize[d,] … *Grimm* remains the law of this Circuit and thus binds parties within the Fourth Circuit." R.28 at 4 (cleaned up).  As a result, the Defendants' actions against APS for its facilities-access policy are arbitrary, capricious, an abuse of discretion, and contrary to law.  5 U.S.C. § 706(2)(A).

"The APA's arbitrary-and-capricious standard requires that agency action be reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021).  Defendants' "high-risk"

designation letter was neither.  Defendants demand that APS adhere to their interpretation of Title IX.  But APS is bound by this Court's holding that Title IX does not *forbid* policies like APS's but *requires* them. *Grimm*, 972 F.3d at 619–20.

In addition, Defendants' actions have singled out APS and four other Northern Virginia school districts based on their policies, despite the fact that other similarly situated school districts in Virginia have policies like the one at issue here.  This unreasoned disparate treatment is by its nature arbitrary. *Kirk v. Comm'r of SSA*, 987 F.3d 314, 321 (4th Cir. 2021) ("Where an agency applies different standards to similarly situated entities and fails to support this disparate treatment with a reasoned explanation and substantial evidence in the record, its action is arbitrary and capricious and cannot be upheld.") (cleaned up).

Further, Defendants plainly "misapprehen[ded] … the baseline conditions existing" in the Fourth Circuit "in advance of [their] action." *Friends of Back Bay v. U.S. Army Corps of Eng'rs*, 681 F.3d 581, 588 (4th Cir. 2012).  An agency abuses its discretion when its "decision is based on an improper understanding of the law." *Pappas v. FCC*, 807 F.2d 1019,

1023 (D.C. Cir. 1986) (cleaned up).  Those baseline conditions and the law included *Grimm* and *Doe*.  R.1 ¶ 111.

And, of course, Defendants' demand that APS obey their policy demands and not this Court is contrary to law.  "It is emphatically the province and duty of *the judicial department* to say what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803) (emphasis added). What Defendants demand here is *abrogation* of the law, not its "faithful[] execut[ion]," *see* U.S. CONST. art. II, § 3—and their actions are thus contrary to that foundational principle.

Because Defendants' actions were arbitrary and capricious, an abuse of discretion, and not in accordance with law, APS is likely to succeed on their APA claims.  5 U.S.C. § 706(2)(A).

*c.  Defendants' actions are contrary to constitutional right or power.*  Courts must also set aside agency actions that are "contrary to constitutional right, power, privilege, or immunity."  5 U.S.C. § 706(2)(B).  "[T]he 'Federal Government may not compel the States to enact or administer a federal regulatory program.'"  *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 575 (2012) (cleaned up).  Congress may, as an exercise of its authority under the Spending Clause, U.S. CONST.

21

art. I, § 8, cl. 1, condition the receipt of federal funds on states' "taking certain actions that Congress could not require them to take," *Sebelius*, 567 U.S. at 576. Nevertheless, Congress may not, consistent with that authority, "commandeer[] a State's legislative or administrative apparatus for federal purposes." *Id.* at 577.

And, of course, if Congress may not *pass* laws that "commandeer[] a State's legislative or administrative apparatus," the Executive may not *execute* Congress's laws in such a fashion. *Id.* When executing federal laws, what is *ultra vires* Congress is similarly *ultra vires* the President, and allowing the Executive to act beyond its authority invades powers retained by the States and the people. U.S. CONST. amend. X.

Here, Defendants are engaged in exactly the kind of "economic dragooning" the Supreme Court has forbidden, leaving APS and other Virginia schools "with no real option but to acquiesce" in Defendants' regulatory interpretation of Title IX. *See Sebelius*, 567 U.S. at 582. By effectively cutting off future access to federal funding, Defendants seek not to "mild[ly] encourage[]," *S. Dakota v. Dole*, 483 U.S. 203, 211 (1987), but to *compel* those divisions to "administer" Defendants' regulatory program barring transgender individuals from accessing facilities that

correspond with their gender identities, *see New York v. United States*, 505 U.S. 144, 188 (1992).

Because that attempted coercion is contrary to Virginia's and its people's reserved constitutional power under the Tenth Amendment, APS's APA *ultra vires* claims will likely succeed.  5 U.S.C. § 706(2)(B).

### 2. APS's declaratory judgment claim is likely to succeed.

#### a. The district court had declaratory-judgment jurisdiction.

Federal courts may exercise jurisdiction over declaratory-judgment claims when

> (1) the complaint alleges an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment; (2) the court possesses an independent basis for jurisdiction over the parties (e.g., federal question or diversity jurisdiction); and (3) the court does not abuse its discretion in its exercise of jurisdiction.

*Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 592 (4th Cir. 2004) (cleaned up); 28 U.S.C. § 2201.  Each of these elements is easily satisfied here.

First, the Complaint alleges an actual controversy between the parties.  *See generally* R.1.  The Complaint sets forth APA claims stemming from fundamentally incompatible interpretations of Title IX. *Id.*

Second, this Court has an independent basis for jurisdiction over the parties. APS's claims arise under the "laws … of the United States," 28 U.S.C. § 1331—specifically, Title IX and the APA. *See* R.1. ¶¶ 2, 66–114. Article III courts have jurisdiction. *See supra* Section I.

Third, this Court has determined that a court may decline declaratory-judgment jurisdiction only for "good reason." *Volvo*, 386 F.3d at 594 (cleaned up). Courts are "obliged to rule on the merits of a declaratory judgment action when declaratory relief will serve a useful purpose in clarifying and settling the legal relations in issue, and will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Volvo*, 386 F.3d at 594 (cleaned up). Here, a declaration affirming that APS's policy does not violate Title IX would settle the legal issues underlying Defendants' erroneous and dangerous decision to attach unsatisfiable conditions to APS's federal funding.

**b. APS's policy codifies Grimm.** APS is likely to succeed on the merits of its Title IX claim because, under *Grimm*, Title IX bars a school board from prohibiting a student who identified as male from using a high school's sex-separated male bathroom. 972 F.3d at 619–20. APS's

24

policy implements that holding. *See* R.1 ¶ 69. Again, the district court—despite its erroneous jurisdictional ruling—has "unconditionally recognize[d]" that it is bound by *Grimm*. R.28 at 4.

### B. APS will suffer irreparable harm absent injunctive relief.

Absent emergency relief, APS will lack resources to meaningfully serve their most vulnerable student populations. *See* R.1 ¶¶ 57–58, 97. The school year has now begun, and with its start, Defendants have conditioned APS's federal funding on APS taking illegal actions. *See id.* at ¶ 99. Defendants' actions strip APS of $23 million in federal funds Congress appropriated for APS's 2025–2026 school year. *Id.* ¶¶ 56–64.

Defendants' action bars access to $8.6 million in federal funds that APS needs to provide nutrition services, including free and reduced-price meals, and to ensure that APS's cafeterias can feed its students high-quality meals. *Id.* ¶ 58. Defendants further deny access to $6 million designated to support students with disabilities. *Id.* Defendants' legally unsupportable decision to strip APS of these resources will likely impose lasting harm on the many APS students who depend on the programs that these federal grants make possible, thus vitiating APS's

constitutional duty to provide them with a free and high-quality education.

Even "economic damages may constitute irreparable harm where no remedy is available at the conclusion of litigation." *Mountain Valley Pipeline, LLC v. W. Pocahontas Props. Ltd. P'ship*, 918 F.3d 353, 366 (4th Cir. 2019). Here, the harm is irreparable because these claims arising under Congress's spending power are not contract claims, and so APS will be unable to seek damages in the Court of Federal Claims.

### C.    The balance of equities and public interest favor APS.

The balance of hardships and public interest also strongly favor injunctive relief. "Where the government is a party—as here—the balance-of-equities and public-interest prongs of the preliminary-injunction test merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Here, the harm to APS far outweighs any potential harm to Defendants, and weighs heavily in favor of injunctive relief. The public interests at issue here include providing students served by APS with a fully funded educational experience, as guaranteed by the Virginia Constitution. *See* VA. CONST. art. VIII, § 1. APS relies on federal funding to meet that obligation. APS cannot satisfy that interest if it cannot access the funds

Congress appropriated for it because the Defendants ignored *Grimm* and arbitrarily imposed a "high-risk" designation on APS.

Conversely, injunctive relief would not harm Defendants. An injunction would preserve the status quo—the "high-risk" designation would effectively be stayed and Defendants would be required to continue to provide funds Congress appropriated for APS. Moreover, "[c]ompliance with Title IX," an important and well-established federal civil rights statute, is in the public interest. *Harris v. Wood*, 888 F. Supp. 747, 778 (W.D. Va. 1995). Indeed, because Defendants' purported justification for their actions is enforcement of Title IX, they can scarcely argue otherwise. APS's policies codify this Court's binding Title IX authority. As the law stands today, Defendants' actions are flatly illegal and should be enjoined.

## CONCLUSION

For the foregoing reasons, the district court's order should be reversed and a preliminary injunction granted.

27

Dated: September 16, 2025

Respectfully submitted,

/s/ *Timothy Heaphy*

Timothy Heaphy
*Counsel of Record*
Joshua N. Mitchell
Fiona Carroll
Lindsay Hemminger
WILLKIE FARR &
  GALLAGHER LLP
1875 K Street Northwest
Washington, DC 20006
202-303-1000
theaphy@willkie.com

Breanna Smith-Bonsu
Chloe Smeltzer
WILLKIE FARR &
  GALLAGHER LLP
300 N. LaSalle Dr.
Chicago, IL 60654
312-728-9000
*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Plaintiff Arlington School Board certifies, pursuant to Local Rule 27(d)(2), that the foregoing motion contains 5,166 words, excluding the parts of the motion exempted by Local Rule 27(d)(2), according to the word count feature of Microsoft Word.

*/s/ Timothy Heaphy*
Timothy Heaphy