KH/RM

**Record No. 25-2107**

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

**ARLINGTON SCHOOL BOARD**
**Appellant**

**v.**

**LINDA McMAHON, in her official capacity as Secretary of Education of the United States, and UNITED STATES DEPARTMENT OF EDUCATION,**
**Appellees.**

**Reply to Appellees' Opposition To Motion to Intervene**

**From the U.S. District Court for the Eastern District of Virginia**
**Civil Action No. 1:25-cv-01434-RDA-LRV**

**Rossie D. Alston, Jr., Federal District Judge**

Major Mike Webb
3445 Washington Boulevard
Apartment # 306
Arlington, VA 22201
Phone: (856) 220-1354
Email: Mike.Webb84@Gmail.com
Petitioner-Appellant in *Pro Se*

# **TABLE OF CONTENTS**

Table of Contents...........................................................................i

Reply to Opposition to Intervention...........................................1

    I.   Nature of the Case ...........................................................1

    II.  Waiver of Standing Challenge .........................................2

    III.   Timeliness ....................................................................6

    IV.   Legal Interest ............................................................15

Prayer for Relief .......................................................................20

**CERTIFICATE OF COMPLIANCE**....................................23

Certificate of Service .................................................................24

## REPLY TO OPPOSTION TO INTERVENTION

Proposed Intervenor, Major Mike Webb (legal name), also known as Michael D. Webb, hereby responds to Appellees' Opposition to the Motion to Intervene, filed, pursuant to Fed.R.Civ.P. 24(a), to intervene as of right, or, in the alternative, for permissive intervention, in accordance with Fed.R.Civ.P. 24(b).

## I. Nature of the Case

Under Tex. R. Disc. P. 1.04, "[a] lawyer shall not enter into an arrangement for, charge, or collect an illegal fee or unconscionable fee", and "[a] fee is unconscionable if a competent lawyer could not form a reasonable belief that the fee is reasonable." In the District of Columbia, "[a] lawyer's fee shall be reasonable", and "factors to be considered in determining the reasonableness of a fee include. . . [t]he time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; . . . [t]he likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; . . [t]he fee customarily charged in the locality for similar legal services; . . . [t]he amount involved and the results obtained; . . . "[t]he limitations imposed by the client or by the circumstances; . . . [t]he nature and

length of the professional relationship with the client"; and "[t]he experience, reputation, and ability of the lawyer or lawyers performing the services. R. Prof'l. Cond. 1.5(a).

"Arlington Public Schools is going to court over a $23 million freeze in funding from the U.S. Department of Education", and "[t]he school system filed a 30-page complaint. . . challenging the Department of Education's decision to designate APS and four other Northern Virginia school systems as 'high risk' because of a legal dispute about their policies around transgender students." Dan Egitto, "DEVELOPING: APS challenges freeze on $23M in federal funding over transgender policy," *ARL Now*, August 29, 2025. Appellants have retained six attorneys at Wilkie Farr Gallagher LLP, where attorneys bill their established clients as high as $2,000. Dan Roe, "Willkie Tops $2,000/Hour, Kirkland Reveals $16 Million Advance Retainer in Cineworld Bankruptcy," *Law*, October 12, 2022.

## II.  <u>Waiver of Standing Challenge</u>

"Where administrative action has raised serious constitutional problems," as here, "the Court has assumed that. . . [the legislature] or the. . . [the executive] intended to afford those affected by the action the

traditional safeguards of due process." *Greene v. McElroy*, 360 U.S. 474 (1959) (citations omitted). Nonetheless, matters like "'[t]he lack of subject matter jurisdiction cannot be waived,' 'cannot be conferred on a court by the litigants,' and 'may be raised at any time'", *Charlottesville Area Fitness Club Operators Ass'n v. Albemarle Cnty. Bd. of Supervisors*, 285 Va. 87 (Va. 2013) (quoting *Virginian–Pilot Media Cos., LLC v. Dow Jones & Co., Inc.*, 280 Va. 464 (2010), an issue raised as to Appellants in the Trial Court. *See* Order, September 5, 2025. Certainly, "the want of such jurisdiction of the trial court will be noticed by this [C]ourt *ex mero motu*", *Afzall v. Commonwealth*, 273 Va. 226 (2007); "[a] judgment or order entered by a court that lacks jurisdiction of the subject matter is a nullity." *Virginian–Pilot*, 280 Va. at 464.

Appellees aver, essentially, that "[o]rdinarily, only participants of federally funded programs—and not the participants' parents—have standing to bring claims under Title IX", *Doe v. Oyster River Co-op. Sch. Dist.*, 992 F. Supp. 467 (D.N.H. 1997)), and, at issue, raised not by Appellant, but rather Appellee is whether Proposed intervenor has sufficiently "established that 'personal stake in the outcome of the controversy,' *Baker v. Carr*, 369 U.S. 186, 204 (1962), that insures that

3

'the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution'"? *Roe v. Wade*, 410 U.S. 113 (1973) (quoting *Flast v. Cohen*, 392 U.S. 83 (1968); *Sierra Club v. Morton*, 405 U. S. 727 (1972)).

Generally, when a party fails to "make any argument addressing. . . standing to bring claims on his own behalf", that party "has thus waived the argument". *Feldman v. Denver Pub. Sch.*, Civil Action No. 23-cv-02986-RMR-STV, 2024 WL 4309365 (D. Color. August 1, 2024 (unpublished) (quoting *Ctr. for Biolog. Divers. v. EPA*, 937 F.3d 533 (5th Cir. 2019) (citing *Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537 (10th Cir. 2016)). At least certainly, "[a]rguments in favor of standing, like all arguments in favor of jurisdiction, can be forfeited or waived." *Ctr. for Biolog. Divers. v. EPA*, 937 F.3d at 533. While Appellees would have this Court believe that Proposed Intervenor "has found no legal authority demonstrating that [his] concern, without more, is enough to show an injury in fact to support standing for him". *Feldman*, Civil Action No. 23-cv-02986-RMR-STV, 2024 WL 4309365, *supra* (quoting *Casady v. Cherry Creek Sch. Dist. Bd. of Educ.*, No. 21-CV-02542-CMA-NYW, 2022 WL 3109599 (D. Colo. June 23, 2022), *report and*

*recommendation adopted sub nom., Ghormley v. Cherry Creek Sch. Dist.*
*Bd. of Educ.*, No. 21-CV-02542-CMA-SKC, 2022 WL 3099145 (D. Colo.
Aug. 4, 2022).

Moreover, upon demurrer, "[a] motion asserting. . . defenses must
be made before pleading if a responsive pleading is allowed", and, while,
"[i]f a pleading sets out a claim for relief that does not require a
responsive pleading, an opposing party may assert at trial any defense
to that claim", Fed. R. Civ. P. 12(b)(7), "[a] party waives any defense
listed in Rule 12(b)(2) –(5) by: . . . omitting it from a motion", or, in the
alternative, "failing to either: (i) make it by motion under this rule; or
(ii) include it in a responsive pleading or in an amendment allowed by
Rule 15(a)(1) as a matter of course." Fed. R. Civ. P. 12(h). In a short and
plain statement, at the outset of his motion, Proposed Intervenor had
declared: "Proposed Intervenor, Major Mike Webb (legal name), also
known as Michael D. Webb, hereby move, pursuant to Fed.R.Civ.P.
24(a), to intervene as of right, or, in the alternative, for permissive
intervention, in accordance with Fed.R.Civ.P. 24(b)." Mot. To Intervene.
And Appellees only make a claim that "'resolution of a motion for
permissive intervention is committed to the discretion of the court

before which intervention is sought." Appellees' Opp. to Intervention, p. 1-2 (quoting *Cameron v. EMW Women's Surgical Ctr. P.S.C.*, 595 U.S. 267 (2022) (citing *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. AFL-CIO, Loc. 283 v. Scofield*, 328 U.S. 205, n. 10 (1965); Fed. R. Civ. P. 24(b)(1)(a)).

## III.  Timeliness

"Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned [in section 1985 of this title], are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented." *Thompson v. Trump*, 590 F. Supp. 3d 46 (D.D.C. February 18, 2022) (quoting 42 U.S.C. § 1986). "The statutory provision is unique", as "[i]t requires persons with knowledge of a conspiracy proscribed in § 1985 and with the means to prevent the conspiracy to take affirmative actions to do so." *Id.* Only "[a] person who refuses or neglects to exercise such power is liable for damages to those persons whose injuries could

6

have been prevented." *Id.*

Where "the defendants having either turned a blind eye to what was happening or themselves introduced policies that they knew would lead to these harms even though the defendants knew the plaintiffs had no connections", a showing of "'deliberate indifference', *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017) (Breyer, J. and Ginsburg, J. dissenting) (quoting *Turkmen v. Hasty*, 789 F.3d 218 (2015) (panel decision); *c.f. Estelle v. Gamble*, 429 U.S. 97 (1976)[1]), and, where defendants are "willfully blind to a harm caused", can trigger due process violation concerns. *Id.*  Nonetheless, Appellees aver that "this Court has held that a party seeking to intervene 'must *generally do so* while the case is pending before a trial court rather than waiting to do so on appeal", Opp. to Intervention, p. 3 (quoting *AEF v. Montgomery Cnty Bd. of Educ.*, 88 F.4th 495 (4th Cir. 2023) (quoting Wright & Miller, 7c *Fed. Prac. & Proc. Civ.* § 1916 (3d ed. 2023), suggesting some discretionary exceptions. And, when they "'offer[] to prove and show by competent evidence' these so-called facts", they proffer, in attested pleadings to this Court that "the record is devoid of any attempt to intervene in the

---

[1] Showing "deliberate indifference to serious medical needs." *Id.*

district court." Opp. to Intervention, p. 3.

As always, in deference, "[w]e review the evidence—both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—in the light most favorable to the government", *U.S. v. McVeigh*, 153 F.3d 1166 (10th Cir.1998), *cert. denied*, 526 U.S. 1007 (1999). Nonetheless, "[b]y presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances". Fed. R. Civ. P. 11(b).

Even if, "[i]n the great run of *pro se* cases, the issues are faintly articulated and often only dimly perceived", *Gordon v. Leeke*, 574 F.2d 1147 (4th Cir. 1978), "[t]o conflate the standards of frivolousness and failure to state a claim. . . would thus deny indigent plaintiffs the practical protections". *Neitzke v. Williams*, 490 U.S. 319 (1989). "It may be realistic today to regard [even] welfare entitlements as more like 'property' than a 'gratuity.'" *Goldberg v. Kelly*, 397 U.S. 254, n.8 (1970). Moreover, as this Honorable Court had stated in *Goldberg*:

"The fundamental requisite of due process of law is the

8

opportunity to be heard." *Grannis v. Ordean*, 234 U.S. 385, 234 U.S. 394 (1914). The hearing must be "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 380 U.S. 552 (1965). However, Proposed Intervenor is but merely a "litigation hobbyist", Order, *U.S. Navy SEALs v. Biden*, Civil Action No. 4:21-cv-01236-O (N.D.Tex. May 23, 2022); Order, *State of Missouri v. Biden*, Record No. 22-30531 (5th Cir. August 1, 2022), with a penchant for "hot-button issues", Informal App. Opp. Brief, *Webb v. Garland*, Record No. 2022-2065(Fed. Cir. 2022), and, as a class, "[i]n the great run of *pro se* cases, the issues are faintly articulated and often only dimly perceived", and "[t]here is, therefore, a greater burden and a correlative greater responsibility upon the district court to insure that constitutional deprivations are redressed and that justice is done", *Leeke*, 574 F.2d at 1147. "[E]specially a *pro se* complaint, should not be dismissed summarily unless 'it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief'", *Id.* (quoting *Haines v. Kerner*, 404 U.S. 519 (1972) (quoting *Conley v. Gibson*, 355 U.S. 41 (1957).

Hence, "review[ing] the evidence—both direct and circumstantial,

9

together with the reasonable inferences to be drawn therefrom—in the

light most favorable to the government", *McVeigh*, 153 F.3d at 1166,

apparently Appellees may have missed the procedural history of this

matter, when "[t]wo Northern Virginia school systems sued the

Education Department to challenge Trump administration threats to

their federal funding over their policies for transgender students' access

to restrooms and locker rooms." Juan Perez, Jr., "Virginia schools sue

Trump administration over transgender student funding fight," *Politico*,

August 29, 2025. Certainly, it is not "subject to reasonable dispute",

Fed.R.Evid. 201(b), that in a matter commenced on August 29, 2025 and

dismissed, with explicit instructions for an expeditious resolution,

stating that "'pursuant to the *Tucker* Act, jurisdiction appropriately lies

with the Court of Federal Claims,'" Dan Egitto, "Federal judge

dismisses APS lawsuit over Education Dept. funding," *ARL Now*,

September 8, 2025, "Defendants [had] raise[d] the threshold question of

this Court's subject matter jurisdiction. Under controlling Supreme

Court and Fourth Circuit precedent, this Court lacks subject matter

jurisdiction", Order, September 5, 2025, just seven days after the action

had been commenced.

One asserting *res judicata* must establish four elements: "(1) the prior decision must have been rendered by a court of competent jurisdiction", as here, "(2) there must have been a final judgment on the merits", as here, "(3) both cases must involve the same parties or their privies", as here, "and (4) both cases must involve the same causes of action." *Id.* (citing *In re: Piper Aircraft*, 244 F.3d 1289 (11th Cir. 2001). And Courts of the Commonwealth have been upheld, rightfully, for imposing sanctions against litigants who persist in bringing claims "barred by *res judicata* from relitigating". *Switzer v. Switzer*, 273 Va. 326 (2007).

And, as expressly stated in the Motion to Intervene, "Intervenor had, as in evidence at Exhibit E, on September 6, 2025, . . . advised retained counsel with respect to their untoward actions", and yet, "'[o]n Sep. 10, 2025, APS appealed the jurisdictional dismissal in order to protect funding for essential student services'". Mot. To Intervene, p. 19-20 (quoting Press Release, "Arlington Public Schools Files Appeal on Court Decision Related to Title IX," *APSVA*, September 13, 2025). A person "cannot claim ignorance. . . when facts call for investigation" because "[i]n such a case, the. . . [person] has a duty of inquiry". *Aozora*

*Bank Ltd. v. Deutsche Bank Sec. Inc.*, 137 A.D.3d 685 (2016).

"Bad faith is not just intentional conduct but intent to engage in conduct for an impermissible reason, willful noncompliance, or willful ignorance of the facts", *Brewer v. Lennox Hearth Prods., LLC*, 601 S.W.3d 704 (Tex. 2020); *see also Schultz v. Schultz*, No. 05-20-00819-CV, 2022 WL 336564 (Tex. App. —Dallas, February 4, 2022). "Good motives and belief in truth do not negate an inference of malice, but are relevant only in mitigation of punitive damages if the jury chooses to accord them weight." *New York Times v. Sullivan*, 376 U.S. 254 (1964) (citing *Johnson Publishing* Co., 271 Ala. at 474).

In the normal course of Proposed Intervenor's litigation experience, where defendants have described his allegations as "'nothing more than an 'unadorned, the-defendant-unlawfully harmed me accusation' that is ripe for dismissal'", White House Memo. of Pts. & Auth. in Spt. of Part. Mot. to Dismiss, *Webb v. EOP*, Civil Action No. 1:23-cv-00816, p. 5 (D.D.C. June 17, 2024) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)), it is not uncommon to find actions to possess even a court-acknowledged "protracted history". Minute Order, *Webb v. EOP*, Civil Action No. 1:23-cv-00816 (D.D.C. May 14, 2024). Hence, in the

12

litigation experience of Proposed Intervenor, within just a week, "nothing short of clairvoyance would have enabled [him]. . . to anticipate that this Court, or any court, would approve dismissal of this case". *Link v. Wabash R. Co.*, 370 U.S. 626 (1962).

Moreover, with respect only to permissive intervention, Appellees have conceded that "[t]imeliness requires an assessment 'from all the circumstances' of the cases but it is 'most important' that the potential interventor [had] sought intervention 'as soon as it became clear' that its interests would not be protected by the parties in the case." Opp. to Intervention, p. 3 (quoting *Cameron*, 595 U.S. at 267). Yet, just "[s]imple negligence is the failure to exercise the care of an ordinarily prudent person in the same or similar circumstances", while "[g]ross negligence is the utter disregard of prudence and a complete neglect of the safety of another that would shock fair minded men." *Griffin v. Shively*, 227 Va. 317 (Va. 1984). "[T]his is not that case". *U.S. v. Rickmon*, No. 19-2054 (7th Cir. 2020).

Setting a low threshold, courts routinely grant leave in various circumstances, setting a low bar to establish "excusable neglect", at least for defendants. *See* Minute Order, *Webb v. Meta Platforms, Inc.*,

13

Civil Action No. 1:23-cv-00816 (D.D.C. October 17, 2023. "The ordinary meaning of 'neglect' is 'to give little attention or respect' to a matter, or, closer to the point for our purposes, 'to leave undone or unattended to esp[ecially] through carelessness'", *Pioneer Investment Services Company v. Brunswick Associates Limited Partnership*, 507 U.S. 380 (1993) (quoting *Webster's Ninth New Collegiate Dictionary* 791 (1983)), and "[t]he word therefore encompasses both simple, faultless omissions to act and, more commonly, omissions caused by carelessness." *Id.* This standard "seems to require a demonstration of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance", and "[a]bsent a showing along these lines, relief will be denied". 4A C. Wright & A. Miller, Federal Practice and Procedure § 1165, pp. 480, 482 (2d ed. 1987).

"Generally, 'excusable neglect' does not require counsel to have been faultless, and 'inadvertence, mistake, or carelessness' can fall within the rule." *Cohen*, 819 F.3d at 476 (citing *Pioneer Inv. Servs. Co.*, 507 U.S. at 380; 4B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1165 (4th ed. 2015)). However, still, "counsel typically must have 'some reasonable basis' for not meeting a filing

14

deadline", *Id.* (citing Wright & Miller, *supra*, § 1165, and "[t]o determine whether the district court permissibly exercised its discretion to find counsel's neglect inexcusable, we consider four factors set forth by the Supreme Court in *Pioneer*: (1) the risk of prejudice to the other side; (2) the length of the delay and the potential impact on judicial proceedings; (3) the reason for the delay and whether it was within counsel's reasonable control; and (4) whether counsel acted in good faith." *Id.* (citing *Pioneer Inv. Servs. Co.*, 507 U.S. at 380;; *Yesudian ex rel. U.S. v. Howard Univ.*, 270 F.3d 969 (D.C.Cir.2001) (applying the four *Pioneer* factors). Clearly, Proposed Intervenor, within the abruptly terminated action brought by Appellant's, at most, may be found to have committed merely excusable neglect.

## IV. Legal Interest

According to Appellees, "Webb makes no meaningful attempt to demonstrate what his interests are beyond a general interest in the litigation." Opp. to Intervention, p. 5. Yet, "[p]rocedural due process. . . extends potentially to any statutorily conferred benefit, whether or not it can be properly construed as a liberty or property interest", *Dilbert v. Newsom*, No. C096274  (Cal. Ct. App. Apr. 8, 2024) (citing *Conejo*

*Wellness Center, Inc. v. City of Agoura Hills* 214 Cal.App.4th 1534 (2013)); "[b]ut, 'it still requires the deprivation of some statutorily conferred benefit before it is implicated'". *Id.* (quoting *Ibid.*). Moreover, "it can hardly be doubted that the constitutional guarantee has its fullest and most urgent application precisely to the conduct of campaigns for political office", *Monitor Patriot Co. v. Roy*, 401 U.S. 265 (1971).

"[T]he court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute". Fed.R.Civ.Pro. 24(a)(1). And Appellees do not expressly contest that, "if two or more persons conspire for the purpose of impeding. . . the due course of justice. . . , with intent to deny to any citizen the equal protection of the laws. . . , whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators." 42 U.S.C. § 1985(2).

"Today, education is perhaps the most important function of state and local governments", *Brown v. Bd. of Educ. of Topeka*, 347 U.S. 483

16

(1954), and it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned", Fed. R. Evid. 201(b)(2), as alleged in his motion, that Intervenor is qualified "as a candidate for any office of the Commonwealth," being both registered, "qualified to vote for and hold. . . office", and he has "been a resident of the Commonwealth for one year next preceding his election and be qualified to vote for that office." Va. Code § 24.2-500. And, as of January 2025, he has, as "a candidate for. . . elected school board of any county or city," obtained the required "125 signatures". Va. Code § 24.2-506(A)(5).

Clearly "the court must permit anyone to intervene who. . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Pursuant to Fed.R.Civ.Pro. 24(a)(2). Moreover, "the court may permit anyone to intervene who. . . has a claim or defense that shares with the main action a common question of law or fact." Fed.R.Civ.Pro. 24(b)(2).

From currently 28,006 students enrolled in PreK to 12, 27,064

17

enrolled in K to 12, Staff, "Membership Summary," APSVA, February 28, 2025, including 13,419 female students (47.81%), only 65 (0.23%) are designated as nonbinary. Staff, "Student Demographics (2024-2025)," APSVA, analytics.apsva.us/public/equity/aps_membership.html (accessed March 12, 2025). Yet this issue, the tangential subject of this litigation, dominates the press, but it is also the subject of litigation, against Appellants, in which Intervenor is now on appeal. *see Webb v. Washington Post*, No. CL24002622-00 (Richmond Cir. June 30, 2025), *on appeal*, Record No. 1559-25-2 (Va.App. 2025). Further, while no other candidate, or interest group, or parent, in the County of Arlington has made it an issue, Arlington had formerly been "billed as the most educated city in the U.S., in a Forbes analysis, thanks to 76% of adults 25 and older holding a bachelor's degree", in a community where "[n]early 42% of Arlington residents hold a graduate degree"; however, even "Forbes [had] noted a racial gap in bachelor's degrees, with 10.5% of non-white residents holding degrees". Cuneyt Dil, "Arlington is the most educated city in the country, study finds," *Axios*, October 26, 2023.

Moreover, while no other candidate in the entire state has made this an issue, "'Virginia is the absolute lowest-scoring state in terms of

proficiency cut score than any other state in the country,' said Board

Member Amber Northern", and "[t]he board said it's to better align

Virginia's standards with a prominent national exam known as The

Nation's Report Card, or NAEP." Nathaniel Kline, "Youngkin's

education board moves to toughen proficiency standards," *Virginia-*

*Mercury*, September 26, 2025. While "[t]he current SOL pass rate is

73%", "the new cut scores would lower that to 43%, more in line with

the 40% of Virginia fourth-graders who passed the NAEP exam,

according to the most recently released data" *Id.* "Projections compiled

by the Virginia Department of Education don't show the exact number

of students who will fail, however, in nearly every grade and subject (in

math and reading), pass rates will plummet below 50%." Tyler

Englander, "Projections show more than 50% of VA students could fail

SOLs because of new cut scores," *DC Now*, September 26, 2025.

Yet, notwithstanding that [s]uch an opportunity, where the state

has undertaken to provide it, is a right which must be made available to

all on equal terms", *Brown*, 347 U.S. at 483, according to Appellees,

"[w]hile that interest may be sincere, it is not a legal interest in the

case." Opp. to Intervention, p. 4. However, "[i]f two or more persons. . .

conspire. . . , for the purpose of depriving. . . any person *or class of persons* of the equal protection of the laws. . . whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators." 42 U.S.C. § 1985(3). Clearly, "the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." Fed.R.Civ.Pro. 24(b).

## **PRAYER FOR RELIEF**

"'The court [had] denie[d] plaintiffs' motions and dismisse[d] the complaints for lack of subject matter jurisdiction because, pursuant to the *Tucker* Act, jurisdiction appropriately lies with the Court of Federal Claims,' Judge Rossie D. Alston Jr. wrote." Dan Egitto, "Federal judge dismisses APS lawsuit over Education Dept. funding," *supra*. Appellees never expressly touch what it describes as Intervenor's "general interest in the litigation." Opp. to Intervention, p. 5.

Yet, while the "firm waiver rule does not apply when the interests

of justice require review", (citing *Morales-Fernandez v. INS*, 418 F.3d

1116 (10th Cir. 2005)), "[f]ailure to make timely objections may bar *de*

*novo* review by the District Judge of the Magistrate Judge's proposed

findings and recommendations and will result in a waiver of the right to

appeal from a judgment of the district court based on the proposed

findings and recommendations of the Magistrate Judge." *Brown v.*

*Burch*, 30 Va.App. 670 (1999) (citing cases).

"In short, good faith would be presumed in the absence of a

showing to the contrary in the manner permitted by our cases."

*University of California Regents v. Bakke*, 438 U.S. 265 (1978) (citations

omitted). Clearly, "this is not that case". *Rickmon*, No. 19-2054, *supra*.

"The court shall grant summary judgment if the movant shows that

there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "All we say

to America is to be true to what you said on paper." Martin Luther

King, Jr., *I've Been to the Mountaintop*, April 3, 1968.

**WHEREFORE**, mindful that "[t]he court need consider only the

cited materials, but. . . may consider other materials in the record",

*Kian v. Kefalogiannis*, 158 Va. 129 (1932) (citing *Effinger v. Hall*, 81 Va.

94 (1879)), for the reasons stated above, and invoking strict scrutiny,

the Trial Court should deny Appellees' opposition to intervention, and

grant such other equitable relief as deemed proper by the Court.

Respectfully submitted,

Major Mike Webb
3445 Washington Boulevard, Apartment 306
Arlington, Virginia 22201
Phone: (856) 220-1354
Email: Mike.Webb84@gmail.com
Date: October 26, 2025

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing complies with Federal Rule of Appellate Procedure 27(d)(2), in that it contains exactly 4,348 words, is in fourteen-point font and utilizes Century Schoolbook typeface.

Respectfully submitted,

Major Mike Webb
3445 Washington Boulevard, Apartment 306
Arlington, Virginia 22201
Phone: (856) 220-1354
Email: Mike.Webb84@gmail.com
Date: October 26, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of October 2025, I will mail this **Reply to Opposition to Intervention**, by hand delivery and/or email to the following parties, named in suit.

Timothy Heaphy, Joshua Mitchell, Fiona L. Carroll & Lindsay Hemminger, Esqs.
Willkie Farr & Gallagher LLP
1875 K Street Northwest
Washington, District of Columbia 20006-1238
Telephone: (202) 303-1000
Email: theaphy@willkie.com;
jmitchell@willkie.com;
fcarroll@willkie.com;
lhemminger@willkie.com

Breanna Smith-Bonsu & Chloe Smeltzer
Willkie Farr & Gallagher LLP
300 North LaSalle Drive
Chicago, Illinois 60654-3406
Telephone: (312)728-9000
Email: bsmith-bonsu@willkie.com;
csmeltzer@willkie.com

Matthew James Mezger, Esq.
Assistant U.S. Attorney Office of the U.S. Attorney 601 D Street, N.W. Washington, District of Columbia 20530
Telephone: (703) 299-3741
Email:
Matthew.Mezger@usdoj.gov

Abhishek Kambli, Esq.
Deputy Associate Attorney & Stanley Woodward, Esq.
Associate Attorney General General Office of the Attorney General 950 Pennsylvania Ave NW Suite 7141 Washington, District of Columbia 20530
Telephone:
Email:

Brett A. Shumate, Esq. U.S. Department of Justice Civil Division, Federal Programs 1100 L St. NW Washington, District of Columbia 20005
Telephone:
Email:

Respectfully submitted,

Major Mike Webb
3445 Washington Boulevard, Apartment 306
Arlington, Virginia 22201
Phone: (856) 220-1354
Email: Mike.Webb84@gmail.com
Date: October 26, 2025

PRESS FIRMLY TO SEAL

PRIORITY MAIL
FLAT RATE ENVELOPE
POSTAGE REQUIRED

**PRIORITY**®
**MAIL**

10/26/25    Mailed from 22204    028W2311555

## PRIORITY MAIL®

MAJOR M WEBB
APT 306
3445 WASHINGTON BLVD
ARLINGTON VA 22201-4546

5.80 oz

**RDC 03**

SCHEDULED DELIVERY DAY: 10/29/25

C003

SHIP
TO:

CLERK
4TH CIRCUIT COURT OF APPEALS
1100 E MAIN ST
RICHMOND VA 23219-3538

### USPS TRACKING® NUMBER



9505 5067 1616 5299 0674 25

00001000014

EP14F October 2023
OD: 12 1/2 x 9 1/2

international destinations.

required.

sions see the

nitations of coverage.

schedule free Package
scan the QR code.



USPS.COM/PICKUP

RECEIVED
U.S. MARSHALS



how2recycle.info

PAPER
POUCH

FROM:

Webb
3445 Washington blvd
#306
Arlington VA
22201

TO:

Clerk
Fourth Circuit Court
of Appeals
1100 E Main Street
Richmond, VA
23219

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments.