Nos. 25-2087 (L), 25-2107

---

# United States Court of Appeals for the Fourth Circuit

---

**FAIRFAX COUNTY SCHOOL BOARD; ARLINGTON SCHOOL BOARD,**

*Plaintiffs-Appellants*,

v.

**LINDA McMAHON, Secretary of the Department of Education; UNITED STATES DEPARTMENT OF EDUCATION**

*Defendants-Appellees.*

---

On Appeal from the United States District Court
For the Eastern District of Virginia
Case Nos. 1:25-cv-1432 (RDA/LRV) & 1:25-cv-1434 (RDA/LRV)

---

## BRIEF OF DEFENDANTS-APPELLEES

---

STANLEY WOODWARD, JR.
Associate Attorney General

ABHISHEK KAMBLI
Deputy Associate Attorney General

LINDSEY HALLIGAN
United States Attorney

MATTHEW J. MEZGER
GARRY D. HARTLIEB
Assistant United States Attorneys
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel:   (703) 299-3741
Fax:   (703) 299-3983
Email: Matthew.Mezger@usdoj.gov

Date: November 19, 2025

*Attorney for Defendants-Appellees*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES .................................................................. iii

INTRODUCTION ............................................................................1

STATEMENT OF JURISDICTION....................................................2

STATEMENT OF THE ISSUES.........................................................3

STATEMENT OF THE CASE.............................................................3

    I.    LEGAL AND FACTUAL BACKGROUND ......................................3

        A.  Title IX Created a Federal Spending Program That Operates as a Contract Between Schools Receiving Funds and the Federal Government...................................................................3

        B.  Whether Title IX or Another Program the Department of Education Administers, the Secretary Serves as the Steward of Those Federal Funds........................................................................5

        C.  The Secretary Investigates a Student Complaint from Fairfax, Investigates Arlington's Compliance with Title IX, and Concludes that School Boards' Policies Violate Title IX ...............................7

        D.  Exercising Her Discretion, the Secretary Designated the School Boards as "High Risk" Entities and Placed Them on Reimbursement Method of Payment ............................................9

    II.    DISTRICT COURT PROCEEDINGS ..........................................11

        A.  Procedural History .......................................................11

        B.  District Court Decision ..................................................11

SUMMARY OF THE ARGUMENT ....................................................14

STANDARD OF REVIEW ................................................................18

ARGUMENT ...................................................................................19

    I.    THERE ARE MULTIPLE JURISDICTIONAL DEFECTS WITH THE SCHOOL BOARDS' APA CLAIMS.................................................20

        A.  The School Boards' Claims Seek Contractual Money Damages .20

B.   The Secretary's Designation Determinations are Committed to Her Discretion by Law ........................................................................31

C.   The School Boards Have Pending Reconsideration Requests Before the Secretary and Have Not Exhausted Their Administrative Remedies ......................................................................................34

II.   THE SCHOOL BOARDS' RELIANCE ON 20 U.S.C. § 1683 CANNOT RESCUE THEIR CLAIMS FROM DISMISSAL ON JURISDICTIONAL GROUNDS ...................36

A.   The Secretary's Payment Method Determinations Made Under 20 U.S.C. § 1226a-1 Do Not Fall Under 20 U.S.C. § 1683 ..............36

B.   The School Boards Have Access to "Judicial Review" if § 1683 Applies Here ...............................................................................41

CONCLUSION ........................................................................................49

CERTIFICATE OF COMPLIANCE ......................................................51

CERTIFICATE OF SERVICE ................................................................52

## TABLE OF AUTHORITIES

CASES

*Adams v. Bain*,
 697 F.2d 1213 (4th Cir. 1982) ...........................................................18

*Bennett v. New Jersey*,
 470 U.S. 632 (1985)...........................................................................25

*Bowen v. Massachusetts*,
 487 U.S. 879 (1988)..................................................................... 47, 48

*Brott v. United States*,
 858 F.3d 425 (6th Cir. 2017) .............................................................45

*Brownback v. King*,
 592 U.S. 209 (2021)..............................................................................2

*Christopher Vill., L.P. v. United States*,
 360 F.3d 1319 (Fed Cir. 2004) ..........................................................22

*City of New York v. U.S. Dep't of Def.*,
 913 F.3d 423 (4th Cir. 2019) .................................................. 2, 18, 20

*Coleman v. Kendall*,
 74 F.4th 610 (4th Cir. 2023) ................................................. 20, 21, 23

*Colwell v. Dep't of Health & Hum. Servs.*,
 558 F.3d 1112 (9th Cir. 2009) ...........................................................46

*Crespo v. Holder*,
 631 F.3d 130 (4th Cir. 2011) .............................................................36

*Davis, as Next Friend of LaShonda D. v. Monroe Cnty. Bd. of Educ.*,
 526 U.S. 629 (1999)..............................................................................5

*Dep't of Educ. v. California*,
 604 U.S. 650 (2025).................................................................... *passim*

*Dinh v. United States*,
  145 F.4th 1316 (Fed. Cir. 2025) ..........................................................44

*Eisenberg v. Wachovia Bank. N.A.*,
  301 F.3d 220 (4th Cir. 2002) ..............................................................20

*Fitzgerald v. Barnstable Sch. Comm.*,
  555 U.S. 246 (2009)............................................................................37

*Fleming v. United States*,
  30 F. App'x 946 (Fed. Cir. 2002) ........................................................44

*FTC v. Standard Oil Co. of Cal.*,
  449 U.S. 232 (1980)............................................................................26

*Gebser v. Lago Visa Indep. Sch. Dist.*,
  524 U.S. 274 (1998)............................................................... 4, 5, 24, 42

*Great-West Life & Annuity Ins. Co. v. Knudson*,
  534 U.S. 204 (2002)............................................................................27

*Heckler v. Chaney*,
  470 U.S. 821 (1985)..................................................................... 16, 31

*Hinck v. United States*,
  550 U.S. 501 (2007)............................................................................43

*Holbrook v. Tenn. Valley Auth.*,
  48 F.4th 282 (4th Cir. 2022) .................................................. 31, 33, 44

*Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*,
  535 U.S. 826 (2002)............................................................................41

*Horne v. Dep't of Agric.*,
  569 U.S. 513 (2013).................................................................... 43, 44

*Invention Submission Corp. v. Rogan*,
  357 F.3d 452 (4th Cir. 2004) ..............................................................26

*Jake's Fireworks Inc. v. U.S. Consumer Prod. Safety Comm'n*,
105 F.4th 627 (4th Cir. 2024) ...............................................................29

*Keene Corp. v. United States*,
508 U.S. 200 (1993)................................................................................49

*Kidwell v. Dep't of Army, Bd. for Corr. of Mil. Rec.*,
56 F.3d 279 (D.C. Cir. 1995) ................................................................12

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994)................................................................................19

*Lane v. Pena*,
518 U.S. 187 (1996)................................................................................40

*Lincoln v. Vigil*,
508 U.S. 182 (1993) ......................................................................... 16, 32

*Litman v. George Mason Univ.*,
186 F.3d 544 (4th Cir. 1999) ..................................................... 4, 24, 42

*Lovo v. Miller*,
107 F.4th 199 (4th Cir. 2024) ...............................................................31

*Marx v. Gen. Rev. Corp.*,
568 U.S. 371 (2013)................................................................................36

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
567 U.S. 209 (2012)................................................................................21

*Milk Train, Inc. v. Veneman*,
310 F.3d 747 (D.C. Cir. 2002)...............................................................32

*Nat'l Black Police Ass'n, Inc. v. Velde*,
712 F.2d 569 (D.C. Cir. 1983)...............................................................40

*Nat'l Ctr. for Mfg. Scis. v. United States*,
114 F.3d 196 (Fed. Cir. 1997)...............................................................23

*Navy Fed. Credit Union v. LTD Fin. Servs., LP*,
    972 F.3d 344 (4th Cir. 2020) ................................................................36

*NIH v. American Public Health Ass'n*,
    145 S. Ct. 2658 (2025) .......................................................... 28, 29

*Ohio Forestry Ass'n. v. Sierra Club*,
    523 U.S. 726 (1998) ................................................................34

*Patrick v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
    860 F. App'x 828 (4th Cir. 2021) ........................................................19

*Pennhurst State Sch. & Hosp. v. Halderman*,
    451 U.S. 1 (1981) ................................................................4

*Polfliet v. Cuccinelli*,
    955 F.3d 377 (4th Cir. 2020) ................................................................34

*Portsmouth Redevelopment & Hous. Auth. v. Pierce*,
    706 F.2d 471 (4th Cir. 1983) .......................................... 12, 22

*Randall v. United States*,
    95 F.3d 339 (4th Cir. 1996) ...................................... 21, 23, 24

*Rogers v. Ink*,
    766 F.2d 430 (10th Cir. 1985) ................................................................22

*Rotkiskie v. Klemm*,
    589 U.S. 8 (2019) ................................................................39

*Ruhrgas AG v. Marathon Oil Co.*,
    526 U.S. 574 (1999) ................................................................20

*Scottsdale Cap. Advisors Corp. v. Fin. Indus. Regul. Auth., Inc.*,
    844 F.3d 414 (4th Cir. 2016) ................................................................26

*Spectrum Leasing Corp. v. United States*,
    764 F.2d 891 (D.C. Cir. 1985) .......................................... 25, 26

vi

*Strate v. A-1 Contractors*,
    520 U.S. 438 (1997) ........................................................................34

*Sustainability Inst. v. Trump*,
    No. 25-1575, 2025 WL 1587100 (4th Cir. June 5, 2025) ........................... *passim*

*Telecare Corp. v. Leavitt*,
    409 F.3d 1345 (Fed. Cir. 2005) .................................................. 21, 42

*Tennessee v. Dep't of Educ.*,
    104 F.4th 577 (6th Cir. 2024) ..........................................................47

*Texas v. Cardona*,
    743 F. Supp. 3d 824 (N.D. Tex. 2024) ...........................................37

*Texas v. United States*,
    523 U.S. 296 (1998) ........................................................................35

*U.S. Army Corps of Eng'rs v. Hawkes Co.*,
    578 U.S. 590 (2016) ........................................................................29

*United States v. Florida*,
    938 F.3d 1221 (11th Cir. 2019) ......................................................40

*United States v. Sioux Nation of Indians*,
    448 U.S. 371 (1980) ........................................................................44

*United States v. Tohono O'Odham Nation*,
    563 U.S. 307 (2011) ........................................................................49

*Velasco v. Gov't of Indon.*,
    370 F.3d 392 (4th Cir. 2008) ..........................................................18

*West Virginia v. B.P.J.*,
    No. 24-43 (S. Ct. 2025) ....................................................................9

**STATUTES**

5 U.S.C. § 701 .......................................................................... 15, 26, 31

5 U.S.C. § 702 ................................................................................21

5 U.S.C. § 704 .................................................................................... 21, 26

7 U.S.C. § 608c ...........................................................................................44

20 U.S.C. § 1221 ...........................................................................................6

20 U.S.C. § 1221e-3 ......................................................................................6

20 U.S.C. § 1226a-1 ........................................................................... *passim*

20 U.S.C. § 1231 ...........................................................................................6

20 U.S.C. § 1234a .........................................................................................7

20 U.S.C. § 1234c .........................................................................................7

20 U.S.C. § 1681 ...........................................................................................3

20 U.S.C. § 1682 ............................................................................... *passim*

20 U.S.C. § 1683 ............................................................................... *passim*

28 U.S.C. § 1295 .........................................................................................45

28 U.S.C. § 1491 ............................................................................... *passim*

42 U.S.C. § 2000d-1 ...................................................................................40

General Education Provisions Act, Pub. L. No. 90-247, 81 Stat. 783 (1970) ..........6

**REGULATIONS**

2 C.F.R. § 200.101 .....................................................................................41

2 C.F.R. § 200.208 ........................................................................... 9, 34, 41

2 C.F.R. § 200.339 .....................................................................................10

2 C.F.R. § 3474.10 ........................................................................... 9, 34, 41

34 C.F.R. § 100.6 ..........................................................................................4

34 C.F.R. § 100.7 .......................................................................................4, 5

34 C.F.R. § 100.8 ........................................................................... 5, 10, 40

34 C.F.R. § 106.81 ........................................................................................4

**INTRODUCTION**

Fairfax County School Board and Arlington School Board ("School Boards") rushed into court seeking an order from the court to pay money from the federal government. This type of claim belonged in the Court of Federal Claims (to the extent it belonged in a court at all). The District Court rightfully dismissed the case, and this Court should not disturb that ruling.

At issue in this case are two discretionary determinations that the Secretary of the Department of Education made, pursuant to 20 U.S.C. § 1226a-1, which solely changed the *manner* by which the two School Boards received grant funding under Title IX of the Civil Rights Act. Erroneously believing these determinations cut off or otherwise froze access to their funding, the School Boards filed this civil action in a federal district court. Invoking the Declaratory Judgment Act and the Administrative Procedure Act ("APA"), the School Boards requested an order requiring the Secretary to make payments of their Title IX funding.

Appreciating that the School Boards' Complaints expressly requested an order mandating payment of money owed and that these APA claims were thus a contract action at their core, the District Court dismissed the two civil actions for lack of subject matter jurisdiction. It was right to do so. The essence of their respective complaints was a challenge to the terms of the funding arrangement with the federal government—effectively maintaining that the Secretary failed to provide the Title

IX funding in a timely manner. Under the strict terms of the APA's limited waiver of sovereign immunity, as confirmed by longstanding and recent precedent, claims that sound in contract are subject to the Tucker Act and exclusively belong in the Court of Federal Claims. The School Boards could not escape this conclusion by merely disguising their contract claim as one seeking injunctive relief. Though the School Boards now belatedly try to maintain that their claims can proceed under 20 U.S.C. § 1683, those efforts likewise fail given that the undisputed record evidence confirms that the Secretary never terminated their funding.

Accordingly, this Court should affirm the District Court's dismissal.

## STATEMENT OF JURISDICTION

Although the Secretary maintains that the District Court lacked subject-matter jurisdiction to entertain the School Boards' claims, the District Court had "jurisdiction to determine its own jurisdiction" when evaluating the School Boards' respective motions for injunctive relief and Complaints before dismissing the consolidated action for lack of jurisdiction. *Brownback v. King*, 592 U.S. 209, 218 (2021); *City of New York v. U.S. Dep't of Def.*, 913 F.3d 423, 430 (4th Cir. 2019). This Court has jurisdiction under 28 U.S.C. § 1291 to review the District Court's jurisdictional dismissal.

## STATEMENT OF THE ISSUES

1.     Whether the District Court properly held that it lacked subject matter jurisdiction over the School Boards' Complaints given that they effectively seek money damages that can be pursued in the Court of Federal Claims, or as the record confirms, Congress vested with the Secretary with plenary discretion to designate funding recipients as high risk and the School Boards have not exhausted their administrative remedies.

2.     Whether the District Court correctly determined that the School Boards' APA claims fell outside the sovereign immunity waiver codified at 20 U.S.C. § 1683 when the Secretary only exercised her discretion under 20 U.S.C. § 1266a-1 to alter the method by which grant payments would be made and did not otherwise refuse or terminate the School Boards' federal funding.

## STATEMENT OF THE CASE

### I.    LEGAL AND FACTUAL BACKGROUND

#### A.    Title IX Created a Federal Spending Program That Operates as a Contract Between Schools Receiving Funds and the Federal Government

Enacted in 1972, Title IX establishes that: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]" 20 U.S.C. § 1681(a). Congress enacted this statute in furtherance of its power under the Spending Clause to create a voluntary

federal spending program that furthered two key objectives: "To avoid the use of federal resources to support discriminatory practices and to provide individual citizens effective protection against those practices." *Gebser v. Lago Visa Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998) (quotation omitted).

"As a federal spending program, [Title IX] operates 'much in the nature of a contract: in return for federal funds, the States agree to comply with federally imposed conditions.'" *Litman v. George Mason Univ.*, 186 F.3d 544, 551 (4th Cir. 1999) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981)). In this contract, the school board accepts the funding and as consideration for those funds it agrees not to discriminate based on sex and waives its Eleventh Amendment immunity to suit. *Gebser*, 524 U.S. at 286; *Litman*, 186 F.3d at 553.

After the contract is formed, the Secretary retains the authority to investigate funding recipients "to ascertain compliance with" the provisions of Title IX. 20 U.S.C. § 1683; 34 C.F.R. § 100.6(c); *see also* 34 C.F.R. § 106.81 (incorporating Title VI of the Civil Rights Act of 1964 investigating authority and procedures to enforcement authority under Title IX). This includes not only "periodic compliance reviews" but also "prompt investigation[s] whenever a compliance review, report, complaint, or any other information indicates a possible failure to comply" with Title IX. 34 C.F.R. § 100.7(a), (c). That investigation typically includes "a review of the pertinent practices and policies of the recipient, the circumstances under which the

possible noncompliance with this part occurred, and other factors relevant to a determination as to whether the recipient has failed to comply with" Title IX. *Id.* § 100.7(c).

Should the Secretary conclude that a funding recipient (*e.g.*, school board) has failed to comply with Title IX, she may undertake "informal means whenever possible" to resolve the violation. *Id.* § 100.7(d)(1). It is only after informal means fail, that the Secretary may then initiate a proceeding under § 1682 to either suspend, terminate, or refuse to grant or grant federal financial assistance. *Id.* § 100.8(a); 20 U.S.C. § 1682; *Gebser*, 524 U.S. at 288 (noting that the regulations "prohibit[] commencement of enforcement proceedings until the agency has determined that voluntary compliance is unobtainable").[1]

### B.   Whether Title IX or Another Program the Department of Education Administers, the Secretary Serves as the Steward of Those Federal Funds

Apart from her obligations to enforce Title IX, the Secretary has parallel obligations under the General Education Provisions Act to steward the federal funds

---

[1] Though these are the *Secretary's* exclusive procedures to enforce Title IX, there are other enforcement mechanisms. The Supreme Court has held that there is "an implied private right of action under Title IX" to sue noncompliant funding receipts, and that "money damages are available in such suits." *Davis, as Next Friend of LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 639 (1999). The prospect of money damages in such private suits thus serves as another enforcement mechanism in Congress's scheme. Thus, regardless of any discretionary action the Secretary may take, the threat of suit by a private party serves as added incentive for funding recipients to always comply with Title IX's anti-discrimination provisions.

of the programs that the Department of Education administers (e.g., Title IX). General Education Provisions Act, Pub. L. No. 90-247, 81 Stat. 783 (1970) (codified as amended in scattered sections of 20 U.S.C. §§ 1221 et seq.). For example, under the statute, the Secretary is empowered to "make, promulgate, issue, rescind, and amend rules and regulations governing the applicable programs administered by, the Department." 20 U.S.C. § 1221e-3. The Secretary is also "authorized to enter into arrangements with other Federal agencies to jointly carry out projects of common interest" and "to transfer to such agencies funds appropriated under any applicable program, and to receive and use funds from such agencies." 20 U.S.C. § 1231(a)(1). In short, Congress has delegated significant authority to the Secretary to enter into agreements involving the allotment of funds for federal education programs administered by the Department of Education.

Accompanying that authority to choose what programs the Department of Education implements is the authority to manage allotments and recoup any erroneously spent or dispersed funds. Indeed, Congress furnished the Secretary with plenary discretion to select an appropriate method for payments for "grants or contracts under any applicable program" such that they can be "made in installments, and in advance or by way of reimbursement." 20 U.S.C. § 1226a-1. In addition, Congress vested the Secretary with the authority to assess whether a funding recipient needs to return funds "because the recipient has made an expenditure of

funds that is not allowable" or the recipient "has otherwise failed to discharge its obligation to account properly for funds under the grant or cooperative agreement." 20 U.S.C. § 1234a(a)(1). Separately, the Secretary can actually *withhold* payments if the Secretary "has reason to believe that any recipient of funds under any applicable program is failing to comply substantially with any requirement of law applicable to such funds." 20 U.S.C. § 1234c(a).

Put simply, the Secretary's role is not strictly limited to selecting the educational programs her Department will administer and deciding *whether* to expend any appropriated moneys; rather, she also has the corresponding responsibility to oversee how that money is being spent and logistics of how that money is transferred to grantees such as the School Boards.

### C. The Secretary Investigates a Student Complaint from Fairfax, Investigates Arlington's Compliance with Title IX, and Concludes that School Boards' Policies Violate Title IX

In early February 2025, the Department of Education received a complaint from a Fairfax student alleging that the Fairfax School Board's "anti-discrimination policy pertaining to transgender students 'provides greater rights to students whose "gender identity" does not match their biological sex than it does to students whose "gender identity" matches their biological sex.'" JA133. The Secretary investigated the complaint and similarly investigated Arlington's facilities-access policy around this same time. JA133-138, JA274-275. After gathering information from the School

7

Boards, on July 25, 2025, the Secretary issued a 21-page decision explaining its findings and analysis at the conclusion of its investigation into the School Boards' respective policies. *See generally* JA149-172.

The Secretary, through the Department's Office of Civil Rights, found that the School Boards' respective policies violated Title IX. Fairfax's Regulation 2603.2 establishes that "[g]ender-expansive and transgender students shall be provided with the option of using a locker room or restroom consistent with the student's gender identity," and Arlington's Policy Implementation Procedure J-2 establishes that "[a]ccess to facilities that correspond to a student's gender identity will be available to all students." JA151 (alterations in original). The Secretary concluded these policies violated Title IX because they "permit[s] access to intimate facilities that correspond with a student's 'gender identity,' which, in turn, requires students to use these intimate facilities in the presence of members of the opposite sex," JA161. To remedy this violation, the Secretary supplied a "draft resolution agreement that specifie[d] the actions that, when taken by [the School Boards], will remedy the violation of Title IX." JA169.

Soon after receiving the Secretary's conclusions, the School Boards requested the opportunity to negotiate with the Department for ninety days. JA174-176, JA311-313. Agreeing to negotiate, the Secretary set a deadline of August 15, 2025, for each School Board to indicate whether it was "willing to consider agreeing to the

8

terms in the draft resolution agreement." JA178, JA315. On that deadline, the School Boards separately indicated to the Secretary that they could not "agree to the Resolution Agreement as drafted," and also requested a stay of the Department's administrative proceedings pending the Supreme Court's ruling in *West Virginia v. B.P.J.*, No. 24-43 (S. Ct. 2025). JA183, JA186, JA321, JA323.

### D.     Exercising Her Discretion, the Secretary Designated the School Boards as "High Risk" Entities and Placed Them on Reimbursement Method of Payment

Four days later, August 19, 2025, the Secretary separately informed both School Boards that they had been "designated as a 'high-risk' entity in accordance with 2 C.F.R. §§ 200.208 and 3474.10." JA193, JA266. Separately, as part of her authority under 20 U.S.C. § 1226a-1, the Secretary placed the School Boards on a reimbursement method of payment. JA209, JA406. That placement "d[id] not freeze or cut off [either] entity's access to federal funds." JA208, JA405. Instead, the revised method of payment "allow[s] the Department to account for identified risks and potential risks and appropriately monitor the grantee to mitigate those risks." JA209, JA406. As a result, the School Boards are only required to submit to the Department "detailed documentation establishing that the expenditure in question can be allowably charged to the grant and has already been paid for by [Fairfax or

Arlington] with non-Federal funds," JA195, JA268, which is a process they already follow for their federal formula grant funds.[2]

The Secretary also indicated to the School Boards in their respective letters that they would continue to receive payment through reimbursement until she "determined that [Fairfax or Arlington] has put into place adequate corrective actions" and that said actions "have been working appropriately for a period of time." JA195, JA268. In other words, though the School Boards will continue to receive funds, the *method* of payment—by reimbursement—will not change until the School Boards take the appropriate remedial steps. Indeed, termination of federal assistance would only occur *after* the Secretary follows the process set forth in 2 C.F.R. § 200.339 or 34 C.F.R. § 100.8, which has not yet occurred. JA209, JA406.

Lastly, the Secretary noted in her letters that the School Boards could "request reconsideration of its designation as 'high-risk'" by "submitting a written request for reconsideration within ten business days." JA196, JA269. Following the Secretary's instruction, each School Board submitted a reconsideration request to the Secretary on August 26, 2025. JA210-211, JA407-408. Though those requests remain pending, JA210-211, JA407-408, and the Secretary is "undertaking individualized

---

[2] Indeed, each School Boards' declarant averred that they already received some of their federal funds through the reimbursement method of payment. *See, e.g.*, JA198, JA399.

reconsideration" of all requests it receives, JA209, JA406, the School Boards initiated their respective suits three days later.

## II.  DISTRICT COURT PROCEEDINGS

### A.  Procedural History

The School Boards filed their respective complaints and moved for an emergency temporary restraining order in the District Court on August 29, 2025. JA012, JA120, JA230, JA329. Raising claims under the APA and the Declaratory Judgment Act, the School Boards generally maintained that the Secretary acted *ultra vires* when she designated them as "high risk." *See, e.g.*, JA029-038; JA246-255. As relief, the School Boards requested that the Secretary's "high risk" designation be set aside and that she "immediately pay to [Fairfax and Arlington] any funds that have been denied." JA038-039, JA255-256. On September 2, 2025, the Secretary filed a substantive opposition to that motion, JA004, JA010.

### B.  District Court Decision

On September 5, 2025, the District Court dismissed the School Boards' civil actions, holding that the School Boards had not met their burden to establish subject matter jurisdiction over their respective cases. *See generally* JA213-225. After reviewing the School Boards' Complaints, and binding Supreme Court precedent, the District Court rightly observed that the School Boards "ultimately require[d]" the District Court "to order the payment of money." JA219. As the District Court noted, this was evident in the School Boards' specific request that the District Court

enjoin the Secretary's designation of the School Boards "as 'high-risk' and requiring that [the School Boards] receive[d] federal funds by reimbursement." JA219 (quoting JA120-121, JA329-330). Accordingly, it was proper to find that the School Boards' legal claims were squarely governed by the Supreme Court's precedential decision in *Department of Education v. California*, 604 U.S. 650 (2025) (per curiam), and this Court's decision in *Sustainability Institute v. Trump*, No. 25-1575, 2025 WL 1587100 (4th Cir. June 5, 2025). JA219.

Appreciating that the Schools Boards contended their suits were different from the above case law because "they did not explicitly request 'money damages,'" the District Court thoroughly explained why that did not rescue their claims from the jurisdictional dismissal. JA219. At the outset, the District Court noted that the School Boards' argument was "contrary to an established line of authority from the Fourth Circuit and other courts holding that plaintiffs may not artfully plead around Tucker Act jurisdiction." JA219 (citing *Kidwell v. Dep't of Army, Bd. for Corr. of Mil. Rec.*, 56 F.3d 279, 284 (D.C. Cir. 1995); *Portsmouth Redevelopment & Hous. Auth. v. Pierce*, 706 F.2d 471, 474 (4th Cir. 1983)). Consistent with this authority, the District Court held that the Schools Boards' avoidance of requesting money damages "would not overcome the direct connection that the Motions and Complaints draw between the relief sought here and the disbursement of federal funds." JA220. Of course, as the District Court properly recognized, the School

Boards still presented an express claim for money damages because "their Complaints seek to compel [the Secretary] to 'immediately pay.'" JA220; *see also* JA221 ("[T]hroughout their briefing, almost over time [the School Boards] mention the 'high-risk' designation, it is in conjunction with the effect that this determination has had or will have on the disbursement of federal funds.").

The District Court also addressed the School Boards' reliance on 20 U.S.C. § 1683. JA220. As the District Court correctly noted, the School Boards' reliance on this statutory provision was not central to their Complaints: the School Boards "made a singular reference" to the statute "in their Memoranda in support of their motions" and only used their reply briefs to devote analysis to this provision. JA220 n.6. And because of the School Boards' belated reliance on this provision, the Secretary "did not have an opportunity to respond" to the argument. JA220 n.6. Despite the School Boards' untimely and underdeveloped argument regarding § 1683, the District Court correctly declined to embrace it on its merits, holding that the statutory provision did not apply to this case given, among other jurisdictional concerns, the School Boards could pursue relief in the Court of Federal Claims. JA220.

Considering the above jurisdictional defects, the District Court ascertained "whether any of the specific counts alleged here should be treated differently from one another." JA223. Based on the parties' representations that there was no basis

13

to do so, the District Court "address[ed] the Complaint[s] as a whole" and subsequently dismissed them for lack of jurisdiction. JA223; *see also* JA424 (School Boards' counsel representing that the District Court "can decide the case either on APA grounds or declaratory judgment grounds").

The School Boards timely noticed appeals to this Court soon thereafter. JA226, JA410.

## SUMMARY OF THE ARGUMENT

1.    The District Court correctly held that the School Boards failed to meet their burden to establish that there is subject matter jurisdiction over their APA claims. Indeed, the School Boards' APA claims suffer from at least three separate jurisdictional defects, and this Court may resolve this appeal on any one of these three bases.

*First*, as the District Court rightly held, the School Boards have brought a contractual claim for damages over which in the United States Court of Federal Claims has exclusive jurisdiction. The APA's limited waiver of sovereign immunity is inapplicable where a party has an adequate alternative remedy. As applied to these circumstances, where a party seeks funding that it believes the government is obligated to pay under a contract or grant, the proper remedy is suit under the Tucker Act in the Court of Federal Claims, not the APA in a federal district court.

And so it is here with respect to the School Boards' claims in connection with their contractual arrangement with the Secretary for Title IX funding. Discontented that the method by which they receive their Title IX funding has changed, the School Boards requested the District Court to order the Secretary to "immediately *pay* to [the School Boards] *any funds* that have been denied." JA038 (emphases added), JA256. This is a dispute for contract damages even though the School Boards have impermissibly attempted to disguise it as an action solely for injunctive relief. Notwithstanding attempts at creative pleading, recent authority from the Supreme Court and this Court provides that district courts are without subject matter jurisdiction to adjudicate these claims. *Dep't of Educ. v. California*, 604 U.S. 650 (2025) (per curiam); *Sustainability Inst. v. Trump*, No. 25-1575, 2025 WL 1587100 (4th Cir. June 5, 2025). And though the School Boards belatedly introduce a theory that 20 U.S.C. § 1683 rescues their claims from a jurisdictional dismissal, that argument falls short for the reasons discussed further below. *See Infra* § II. In short, this case should proceed, if at all, in the Court of Federal Claims.

*Second*, the Secretary's decision to designate the School Boards as "high-risk" and place them on a reimbursement method of payment are decisions committed to her discretion as a matter of law. By its plain terms, the APA does not reach agency action that "is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). The Secretary's designation authority under 20 U.S.C. § 1226a-1 plainly furnishes the

Secretary with discretion: "Payments pursuant to grants or contracts under any applicable program *may* be made in installments, and in advance or by way of reimbursement, with necessary adjustments on account of overpayments or underpayments, as the Secretary *may* determine." *Id.* (emphases added). And as the Supreme Court has held, the types of monetary determinations at issue here—including the logistical elements of actual payments—are steeped in policy-laden questions. Indeed, the decision how to allocate resources involves a complicated balancing of a number of factors that are uniquely within the agency's expertise, including "whether its 'resources are best spent' on one program or another; whether it 'is likely to succeed' in fulfilling its statutory mandate; whether a particular program 'best fits the agency's overall policies'; and, 'indeed, whether the agency has enough resources' to fund a program at 'at all.'" *Lincoln v. Vigil*, 508 U.S. 182, 193 (1993) (quoting *Heckler v. Chaney*, 470 U.S. 821, 831 (1985)). Moreover, as the statute plainly conveys, there are no meaningful standards by which to assess the exercise of the Secretary's authority. Decisions about payment method fall squarely within her sole discretion, and the School Boards have made no effort to explain how these discretionary determinations can be reviewed under the APA. Put simply, and consistent with precedent, they cannot.

*Third*, the Court should not exercise jurisdiction while the parties continue to be engaged in an administrative process. Prudential restraint cautions against the

federal courts wading in to ongoing disputes while available administrative remedies are still available to be used. As the undisputed record evidence shows, both School Boards have pending reconsideration requests before the Secretary, and the Secretary is still considering them as she has with other similar requests.

2.       The District Court correctly held that Title IX's judicial review provision, 20 U.S.C. § 1683, does not apply to the Secretary's discretionary decision to place the School Boards on a reimbursement payment method for grant payments. As § 1683's text reveals, that provision is reserved for actual terminations, refusals to grant, or discontinuations of federal funds as a result of proceedings initiated under 20 U.S.C. § 1682. As this record confirms, the Secretary's challenged determinations do none of these things, and she did not initiate proceedings under § 1682. As a result of her decisions as to the method of payment, made instead pursuant to 20 U.S.C. § 1226a-1, the School Boards have continued to receive their federal grant funds. All that has changed is the method of payment. Accordingly, the discretionary determinations that serve as the gravamen of the School Boards' challenge here fail to meet the parameters of the waiver of sovereign immunity in 20 U.S.C. § 1683.

That this is so does not deprive the School Boards of all access to judicial review. Their request for immediate payment of funds can be—and is appropriately—heard in the Court of Federal Claims. Congress could and did vest

17

the Court of Federal Claims with jurisdiction to consider such matters. *See* 28 U.S.C. § 1491(a). Though the School Boards maintain otherwise, the Court of Federal Claims actually provides "judicial review." Even if the School Boards pursued judicial review in that forum, they would still be able to obtain judicial review from an Article III court in the Court of Appeals for the Federal Circuit, which has jurisdiction to hear appeals of any final decision of the Court of Federal Claims. Further, while Title IX provides APA review in certain circumstances, those do not extend to the School Boards' current claims, which are unripe.

## STANDARD OF REVIEW

This Court reviews the dismissal of a Complaint for lack of jurisdiction *de novo*. *City of New York*, 913 F.3d at 430. That review is the same when the district court denies a motion for a preliminary injunction after concluding it lacked subject matters jurisdiction over the underlying civil action. *See id.* Moreover, because the Secretary contested the School Boards' jurisdictional allegations, this Court reviews "the district court's factual findings with respect to jurisdiction for clear error and the legal conclusion that flows therefrom *de novo*." *Velasco v. Gov't of Indon.*, 370 F.3d 392, 398 (4th Cir. 2008) (citations omitted). Contrary to the School Boards' assertion, Appellants Br. at 16-17, the School Boards thus do not receive "the same procedural protection as [they] would receive under a Rule 12(b)(6) consideration," *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

## **ARGUMENT**

The District Court's jurisdictional dismissal should be affirmed because the School Boards have not met their burden to overcome the "presum[ption] that a cause lies outside" of a federal court's jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). To start, the School Boards have not even tried to claim that the District Court erred in dismissing their Declaratory Judgment Act claims, and as such, have abandoned any such argument. The School Boards instead focus exclusively on their APA claims, and on the primary argument that 20 U.S.C. § 1683 supplies the District Court with jurisdiction. Appellants Br. at 18. Setting aside that this argument was only first raised in their reply brief in the District Court, JA220 & n.6,[3] their efforts to rely on 20 U.S.C. § 1683 fall flat. Briefly, and assuming this argument is not deemed forfeited, § 1683's review provision is not implicated here because the Secretary's discretionary determination neither revoked nor terminated the School Boards' federal funds. Just as importantly, the School Boards' action explicitly sought the payment of money, challenged the Secretary's

---

[3] That the School Boards elected to raise this argument for the first time in their District Court reply brief, which, as the District Court observed, JA 220, prevented the Secretary from having "an opportunity to respond," confirms that this argument has been forfeited for appeal. *Patrick v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 860 F. App'x 828, 833 (4th Cir. 2021) ("We do not credit [appellant's] untimely argument, because arguments raised for the first time in a party's reply brief generally are insufficient for consideration by the district court and are not reviewable on appeal." (citations omitted)).

exercise of the discretion committed to her by law, and sought judicial intervention into a dispute when the administrative process has yet to conclude. Each of these considerations is a separate basis to affirm the District Court's jurisdictional dismissal. All told, this Court should affirm.

## I.    THERE ARE MULTIPLE JURISDICTIONAL DEFECTS WITH THE SCHOOL BOARDS' APA CLAIMS

At least three jurisdictional defects confirm that the District Court's dismissal should be affirmed. *See Eisenberg v. Wachovia Bank. N.A.*, 301 F.3d 220, 222 (4th Cir. 2002) (observing the well-established principle that this Court "can affirm on any basis fairly supported by the record" (citation omitted)). In considering these additional jurisdictional defects, and those made above, the Court may address them in any order it prefers. *City of New York*, 913 F.3d at 430 (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578 (1999)).

### A.    The School Boards' Claims Seek Contractual Money Damages

As the District Court correctly held, the School Boards' APA claims effectively sought an order for the payment of money and as such, it lacked jurisdiction over those claims. That holding is fully consistent with the plain terms of the APA and precedent. The APA provides a limited waiver of sovereign immunity to review final agency actions provided that the parties "seek relief other than monetary damages 'for which there is no other adequate remedy in a court.'" *Coleman v. Kendall*, 74 F.4th 610, 615 (4th Cir. 2023) (quoting *Randall v. United*

*States*, 95 F.3d 339, 346 (4th Cir. 1996)); 5 U.S.C. § 704. Thus, "where 'a plaintiff has an adequate remedy by suit under the Tucker Act,' they are precluded from review under the APA." *Id.*[4] (quoting *Randall*, 95 F.3d at 346); *see also Telecare Corp. v. Leavitt*, 409 F.3d 1345, 1349 (Fed. Cir. 2005) (holding that "availability of an action for money damages under the Tucker Act . . . is presumptively an 'adequate remedy' for [5 U.S.C.] § 704 purposes").

Separately, and of import here, is the APA's waiver of sovereign immunity "comes with an important carve-out": it does not apply "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012) (quoting 5 U.S.C. § 702). This carve-out "prevents plaintiffs from exploiting the APA's waiver to evade limitations on suit contained in other statutes." *Id.*

To analyze whether there is jurisdiction, "courts must look to the 'essence' of the complaint and whether the relief requested is 'not . . . an incident of, or collateral to, a monetary award." *Coleman*, 74 F.4th at 615-16 (quoting *Randall*, 95 F.3d at 347). Accordingly, this Court need not credit the School Boards' reflexive and self-serving assertions that they "do not seek contract damages," Appellants Br. at 32, or

---

[4] The Tucker Act provides a waiver of sovereign immunity for "any claim against the Untied States founded . . . upon any express or implied contract with the United States." 28 U.S.C. § 1491(a).

have unilaterally avoided implicating the Tucker Act because they seek "the district court to prospectively require that Defendants remove their arbitrary designation," Appellants Br. at 22. To do otherwise would permit the School Boards to plead around the Court of Federal Claims' jurisdictional charter, which this Court has held "cannot be avoided by framing an essentially monetary claim in injunctive or declaratory terms." *Portsmouth Redevelopment & Hous. Auth.*, 706 F.2d at 474; *see also Christopher Vill., L.P. v. United States*, 360 F.3d 1319, 1328-29 (Fed Cir. 2004) ("A party may not circumvent the Claims Court's exclusive jurisdiction by framing a complaint in the district court as one seeking injunctive declaratory or mandatory relief where the thrust of the suit is to obtain money from the United States." (citing *Rogers v. Ink*, 766 F.2d 430, 434 (10th Cir. 1985))).

1. Distilled to their core essence, the School Boards' APA claims are for money damages which can only be pursued in the Court of Federal Claims in a claim under the Tucker Act. That is evident from their respective Complaints when they expressly requested payment of money: asking the District Court to "[r]equire that Defendants *immediately pay* to [Fairfax and Arlington] *any funds* that have been denied pursuant to Defendants' August 19, 2025 letter." JA039 (emphases added), JA256. But even without that key admission, the School Boards seek to be made whole through payment of money damages. As they see it, the School Boards are entitled to uninterrupted Title IX funding and are owed allegedly late payments,

which is why the "removal of the 'high-risk' status and impermissible conditions" is paramount to securing "the continued availability of federal funds"—*i.e.*, make payments in advance rather than by reimbursement. Appellants Br. at 3. Of course, assuming the Secretary breached those obligations under Title IX's funding provisions, and is somehow required to make continued payments to the School Boards, that is a claim that should be resolved by the Court of Federal Claims under the Tucker Act.[5] But to suggest that this case is nothing more than a request for prospective relief ignores the School Boards' repeated efforts to secure payment of money (*i.e.*, undo the allegedly unlawful "conditioning and freezing of federal funds"). JA038, JA255. Indeed, as aptly observed by the District Court, "almost every time [the School Boards] mention the 'high-risk' designation, it is in conjunction with the effect that this determination has had or will have on the

---

[5] In such a suit for damages, the Court of Federal Claims would also have the limited ability to grant equitable relief. *See Coleman*, 74 F.4th at 615. The Tucker Act authorizes injunctive relief "when such relief is necessary to provide an entire remedy and when the injunction is 'an incident of and collateral to' an award of monetary relief." *Randall*, 95 F.3d at 347 (quoting 28 U.S.C. § 1491(a)(2)). *Amicus* NAACP is wrong to claim otherwise and its accompanying reliance on *National Center for Manufacturing Sciences v. United States*, 114 F.3d 196, 201-02 (Fed. Cir. 1997) is misplaced. NAACP Amicus Br. at 18, 22. There, the Federal Circuit addressed whether the Tucker Act conferred jurisdiction in the Court of Federal Claims over a claim that arose from a failure to enter into a cooperative agreement provided by statute. *Nat'l Ctr. for Mfg. Scis.*, 114 F.3d at 198. But that case has no bearing on the issues here because it involved efforts to obtain a contract in the first instance, 28 U.S.C. § 1491(b), as opposed to efforts to enforce the pre-existing contract, *id.* § 1491(a)(1). *See Nat'l Ctr. for Mfg. Scis.*, 114 F.3d at 202.

disbursement of federal funds." JA221 (collecting citations to the School Boards'
pleadings). Thus, despite the School Boards' efforts, they cannot plead around the
fact that this case is about the terms under which the School Boards will receive
actual and specific payments of money. *Randall*, 95 F.3d at 346 ("[T]his court is
cautious about trespassing into the province of the Court of Federal Claims and the
Federal Circuit to decide non-tort actions against the United States."). Though the
School Boards have belatedly raised 20 U.S.C. § 1683 as a new basis to support
jurisdiction over their APA claims, that assertion fails for the reasons elaborated on
below. *See infra* § II. As such, only the Court of Federal Claims has jurisdiction over
these claims.

The School Boards and *Amicus* NAACP wrongly suggest that there are no
contractual underpinnings to this case given the underlying statutory framework. Per
the School Boards, "the grant provisions at issue here are not contracts," Appellants
Br. at 22, and per *Amicus* NAACP, "formula funds can hardly be said to arise from
contract," NAACP Amicus Br. at 14-16. That cannot be squared with precedent from
the Supreme Court and this Court. As this Court has recognized, the Title IX
spending program "operates much in the nature of contract: in return for federal
funds, the States agree to comply with federally imposed conditions." *Litman v.
George Mason Univ.*, 186 F.3d 544, 551 (4th Cir. 1999) (quotation omitted); *Gebser
v. Lago Vista Ind. Sch. Dist.*, 524 U.S. 274, 286-88 (1998). Thus, the arrangement

between the School Boards (through the Commonwealth of Virginia) and the Secretary is entirely contractual. There was a bargained-for exchange between the two sovereigns and now there is a dispute about the particular payment terms. *Cf. Bennett v. New Jersey*, 470 U.S. 632, 638 (1985) (noting that "many . . . federal grant programs" are "much in the nature of a contract" (quotation omitted)). That Title IX sets one of the mandatory conditions for receiving funding, that fact does not lead inexorably to the conclusion that the parties' dispute has lost its contractual nature. The dispute exists solely because of the contractual agreement into which Virginia and the Secretary entered.

To illustrate this, consider *Spectrum Leasing Corp. v. United States*, 764 F.2d 891 (D.C. Cir. 1985). There, a government contractor encountered difficulties performing the contract; the government invoked a liquidated damages provision and, as a result, withheld payments under the contract. *Id.* at 892. The contractor sued, claiming that the government had violated statutory procedures in withholding the payments. *Id.* The D.C. Circuit held that the suit was only cognizable in the Court of Federal Claims, reasoning that the plaintiff sought "an injunction requiring the government to pay monies owed" and that the "right to these payments is created in the first instance by the contract, not by the" the relevant statute. *Id.* at 894. In other words, the statute "confers no such right in the absence of the contract itself." *Id.* The requested remedy was thus "the classic contractual remedy of specific

performance." *Id.* So too here.

Finally, the School Boards and *Amicus* NAACP contend that unless the Court accept their jurisdictional argument, they are left without any legal forum to review the Secretary's designations. Appellants Br. at 23; NAACP Amicus Br. at 21-26. First, precedent is clear that the APA "does not provide judicial review of everything done by an administrative agency." *Invention Submission Corp. v. Rogan*, 357 F.3d 452, 459 (4th Cir. 2004) (quotation omitted); 5 U.S.C. §§ 701, 704 (limiting scope of final agency actions that are reviewable). Second, assuming the Court of Federal Claims is truly unavailable to the School Boards for their claims in this particular posture, they will have access to the judicial review provisions under 20 U.S.C. § 1683 should the Secretary initiate, complete, and succeed in proceedings brought under 20 U.S.C. § 1682. *See also infra* § II.B. Though there is an inherent administrative burden in undergoing such proceedings, that is not basis to excuse the APA's strict parameters authorizing judicial review. *See FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 242 (1980); *Scottsdale Cap. Advisors Corp. v. Fin. Indus. Regul. Auth., Inc.*, 844 F.3d 414, 423 (4th Cir. 2016). Third, if a private party brings a suit against the School Boards under Title IX that the School Boards believe is inconsistent with this Court's precedent, the School Boards can raise that defense in that suit. All told, the School Boards are not without a legal forum to raise their merits arguments.

26

2. Recent precedent from the Supreme Court in *Department of Education v. California*, 604 U.S. 650 (2025) (per curiam), and this Court's decision in *Sustainability Institute v. Trump*, No. 25-1575, 2025 WL 1587100 (4th Cir. June 5, 2025) further underscore that the School Boards' claims properly fall under the Tucker Act. In *California*, the Supreme Court held that the Secretary was likely to succeed in showing that the district court lacked jurisdiction over an APA claim that sought to require the Secretary to "pay out past-due grant obligations and to continue paying obligations as they accrue." *Id.* at 650-51. There, the Supreme Court explained that "the APA's limited waiver of immunity does not extend to orders 'to enforce a contractual obligation to pay money' along the lines of what the District Court ordered here." *Id* at 651 (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002)). What the School Boards seek here is no different than what was at issue in *California*. The School Boards, like in *California*, seek an order "to continue paying obligations as they accrue," *id.* at 650, as they asked the District Court for an order to "immediately pay to [Fairfax and Arlington] any funds that have been denied," JA039, JA256.

From the School Boards' perspective, this case is different because they "ask the Court to set aside the Department's action designating the School Divisions as high-risk and conditioning its continued receipt of federal funds." Appellants Br. at 32. As such, as they see it, the case falls within *California*'s express reminder that

"a district court's jurisdiction is not barred by the possibility' that an order setting aside an agency's action may result in the disbursement of funds." Appellants Br. at 32 (quoting *California*, 604 U.S. at 651). But removal of the designation does not turn on the School Boards' federal funds as they were never turned off in the first instance. JA208, JA405. Whether based on a school district's compliance with Title IX, a school district's accounting procedures, or any other fact, the Secretary maintains the discretion to set the term of the payment method for this Title IX funding contract. 20 U.S.C. § 1226a-1. Any challenge to the method of payment is therefore a challenge to the terms of the contract and a request to pay out money owed under the obligation. There is an adequate remedy in the Court of Federal Claims for any breach, and in any event, such a contract action is impliedly forbidden from proceeding in district court.

Along similar lines, the Supreme Court's decision in *NIH v. American Public Health Ass'n*, 145 S. Ct. 2658 (2025), inclusive of Justice Barrett's solo concurrence, does not aid the School Boards. *See* Appellants Br. at 34-35. There, the Supreme Court reemphasized that in cases such as this, the APA "does not provide the District Court with jurisdiction . . . to order relief designed to enforce any 'obligation to pay money.'" *NIH*, 145 S. Ct. at 2659 (quoting *California*, 604 U.S. at 651). Though Justice Barrett's solo concurrence observed that the plaintiffs could pursue their separate claim to "vacate the guidance documents" that set NIH's priorities for

awarding grants, this case is different. *Id.* at 2661 (Barrett, J., concurring in part). Unlike *NIH*, there are no separate guidance documents for the School Boards to challenge, there is just the determinations made pursuant to 20 U.S.C. § 1226a-1 that both School Boards are "high risk" and that both should receive their Title IX funding through a reimbursement method of payment. Apart from that core distinction, the School Boards have not shown that the Secretary's high risk designation determinations are inextricably linked to the decision to be placed on reimbursement method of payment such that the removal of the former designation means that the School Boards can change to another method of payment. *Cf. NIH*, 145 S. Ct. at 2661 (Barrett, J., concurring in part) ("Even if the guidance and grant terminations are linked, vacating the guidance does not necessarily void decisions made under it[.]"). Nor could they make such a showing because the Secretary's high-risk designation decision is not in itself a final agency action from which "legal consequences will flow" without the reimbursement method of payment. *Jake's Fireworks Inc. v. U.S. Consumer Prod. Safety Comm'n*, 105 F.4th 627, 631 (4th Cir. 2024) (quoting *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 597 (2016)).

Lest there be any remaining doubt, this Court's decision in *Sustainability Institute* confirms that the District Court lacked jurisdiction over this case. There, relying on *California*, this Court held that the government was likely to succeed on

its appeal because the underlying grants, which the plaintiffs requested to be restored, "were awarded by federal executive agencies to specific grantees from a generalized fund" and "it was the operative grant agreements which entitle any particular Plaintiff to receive federal funds." *Sustainability Inst.*, 2025 WL 1587100, at *2. As such, even though the plaintiffs (like the School Boards, Appellants Br. at 33) contended that the "dispute does not hinge on the terms of a contract between the parties," *Sustainability Institute* stayed a preliminary injunction that required the Government to "restore [the plaintiffs'] access to grant funds immediately" and prohibited the Government from "freezing, terminating or otherwise interfering with the funding of [the grants]," 2025 WL 1587100, at *1, *2 (cleaned up). This relief, *Sustainability Institute* concluded, inclusive of any claim that the government acted ultra vires, cannot "provide a detour around the Tucker Act." *Id.* at *2.

The School Boards' requests are just as far reaching despite their attempt to contend otherwise, Appellants Br. at 33-34. As the District Court noted, the School Boards "expressly linked their claims to the disbursement of money" and that is evident in their Complaints and motions for a preliminary injunction. JA221. As their Complaints state, the School Boards required "immediate action" from the Court to restore "the federal funds that Defendants have defectively frozen" and in their proposed orders required that the Secretary be prevented providing them "federal funds by reimbursement." JA039, JA221, JA256. All told, the District Court

30

was right to conclude there was no jurisdiction as their claims properly belong in the Court of Federal Claims.

### B.   The Secretary's Designation Determinations are Committed to Her Discretion by Law

This Court does not have jurisdiction over the School Boards' APA claims because her "high-risk" determinations are committed to her discretion by statute and regulation. Though the APA establishes a "basic presumption of judicial review" of final agency action, "[c]ourts may not, however, exercise jurisdiction over an APA claim if the claim falls under an exception to the APA's judicial-review provisions." *Lovo v. Miller*, 107 F.4th 199, 205 (4th Cir. 2024) (citations omitted). Relevant here, "the APA does not permit judicial review of a challenge to 'agency action [that] is committed to agency discretion by law.'" *Id.* at 210 (quoting 5 U.S.C. § 701(a)(2)) (alteration in original). In other words, "if no judicially manageable standards are available for judging how and when an agency should exercise its discretion, then it is impossible to evaluate agency action for 'abuse of discretion.'" *Holbrook v. Tenn. Valley Auth.*, 48 F.4th 282, 288 (4th Cir. 2022) (quoting *Heckler v. Chaney*, 470 U.S. 821, 830 (1985)). This is a two-part analysis that examines whether the agency action at issue "has traditionally been committed to agency discretion" and if so, whether any statute "limits agency discretion by setting guidelines or otherwise providing a limit." *Id.* at 290.

31

1. As the Supreme Court's decision in *Lincoln v. Vigil*, 508 U.S. 182 (1993) confirms, the Secretary's determination concerning method of payment for allocated funds is the type of decision typically committed to agency discretion. *Id.* at 192. There, *Vigil* held that the "allocation of funds from a lump-sum appropriation" is an "administrative decision traditionally regarded as committed to agency discretion" and thus not reviewable under the APA. *Id.* Per *Vigil*'s binding reasoning, "as long as the agency allocates funds from a lump-sum appropriation to meet permissible statute objectives, [the APA] gives the courts no leave to intrude" through arbitrary-and-capricious review. *Id.* at 193.

This is because allocation determinations rest on a "complicated balancing of a number of different factors which are peculiarly within [the agency's] expertise," *Milk Train, Inc. v. Veneman*, 310 F.3d 747, 751 (D.C. Cir. 2002), and Congress "may always circumscribe agency discretion to allocate resources by putting restrictions in the operative statutes," *Vigil*, 508 U.S. at 193. This logic extends to more specific appropriations because where Congress leaves "to the Secretary the decision about how the moneys" appropriated for a particular program "could be best distributed consistent with" the governing statute, these are decisions that are not subject to judicial review. *Milk Train, Inc.*, 310 F.3d at 752. These principles plainly establish that if the decision to allocate funds and how much to allocate are matters traditionally vested in agency discretion, so too is the question of the *method* of

32

allocation. *See also Holbrook*, 48 F.4th at 290 (observing that "decisions that involve resource allocation" are the "kind of action that has traditionally been committed to agency discretion"). As such, the Secretary's decision for a funding recipient's payment method is a matter reserved to her discretion and it was incumbent upon the School Boards to identify a showing that Congress tended to cabin that discretion.

2. There is no indication that the Secretary's discretionary authority to alter the method of payment has been circumscribed in any meaningful way by Congress. For the School Boards to overcome the presumption against reviewability for this determination, they must point to some "guidelines for the agency to follow in exercising its enforcement powers"—either through Congress's "setting [of] substantive priorities, or by otherwise circumscribing an agency's power." *Holbrook*, 48 F.4th at 293 (quotations omitted). A review of the Secretary's statutory authority, 20 U.S.C. § 1226a-1, confirms this.

That provision establishes that "[p]ayments pursuant to grants or contracts under *any* applicable program may be made . . . by way of reimbursement . . . as the Secretary *may determine*." 20 U.S.C. § 1226a-1 (emphases added). As the text confirms, the statute's reach is not limited—it reaches "any" applicable program. Moreover, there are no limiting parameters to the Secretary's discretion. She "may determine" the method of payment and reimbursement is one of those methods. *See*

*Polfliet v. Cuccinelli*, 955 F.3d 377, 382 (4th Cir. 2020) (holding that when Congress uses "may" in a statute, that confers discretion). The absence of any qualifying language, combined with "terms indicating discretion," means the statute "unambiguously specifies discretion in detail."[6] *Id.*

### C. The School Boards Have Pending Reconsideration Requests Before the Secretary and Have Not Exhausted Their Administrative Remedies

As a matter of prudential restraint, the Court should affirm the dismissal of this action while the School Boards' respective requests for reconsideration of the Secretary's "high-risk" designations remain pending. Requiring exhaustion of alternative remedies is a prudential restraint, as it allows agencies to exercise autonomy and discretion and prevents premature judicial intervention. *Cf. Strate v. A-1 Contractors*, 520 U.S. 438, 439 (1997) ("Rather, these cases prescribe a prudential, nonjurisdictional exhaustion rule requiring a federal court in which tribal-court jurisdiction is challenged to stay its hand, as a matter of comity, until after the tribal court has had an initial and full opportunity to determine its own jurisdiction."); *see also Ohio Forestry Ass'n. v. Sierra Club*, 523 U.S. 726, 733 (1998) (agency consideration remained ongoing, which means that "judicial

---

[6] The Department of Education has vested in the Secretary by regulation the same discretion that Congress conferred to the Secretary by statute. *See* 2 C.F.R. §§ 200.208 and 3474.10. The School Boards have made no argument that the Secretary did *not* follow the regulatory process in this case.

intervention would inappropriately interfere with further administrative action"); *Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.").

Considering that both School Boards' reconsideration requests remain pending, there is no basis for the federal courts to wade into the parties' potential dispute—especially when the Secretary is individually reviewing these requests. JA209, JA406. The School Boards may contend that the Secretary will not be receptive to their claims, but that contention has no grounding in the record. Rather than work with the Secretary to find an approach consistent with this Court's precedent and with the Secretary's concerns with the School Boards' respective policies, the School Boards have only asked to extend the negotiation period or stay the investigation pending a Supreme Court decision that will likely be decided in 2026. JA024-025, JA242. Despite efforts to avoid working with the Secretary, the ability the do so remains open to each School Board with their pending reconsideration requests. This Court should therefore affirm the dismissal on this basis as well.

II.    THE SCHOOL BOARDS' RELIANCE ON 20 U.S.C. § 1683 CANNOT RESCUE
       THEIR CLAIMS FROM DISMISSAL ON JURISDICTIONAL GROUNDS

   A.    The Secretary's Payment Method Determinations Made Under 20
         U.S.C. § 1226a-1 Do Not Fall Under 20 U.S.C. § 1683

The District Court also rightly concluded that the judicial review provision

under 20 U.S.C. § 1683 does not apply here. The School Boards' arguments to the

contrary contradict the statute's text and find no support in this record.

"As in all statutory construction cases," the place to start is the "plain text of

the provision." *Navy Fed. Credit Union v. LTD Fin. Servs., LP*, 972 F.3d 344, 356

(4th Cir. 2020) (first quoting *Marx v. Gen. Rev. Corp.*, 568 U.S. 371, 376 (2013)).

When "the statute's language is plain, the sole function of the courts . . . is to enforce

it according to its terms." *Crespo v. Holder*, 631 F.3d 130, 134 (4th Cir. 2011).

Though § 1683 provides funding recipients two pathways to judicial review, neither

are implicated here because the Secretary has not invoked the procedures of 20

U.S.C. § 1682, and she has not terminated, refused to grant, or discontinue federal

funds to the School Boards.

The first sentence of § 1683 states: "Any department or agency action taken

pursuant to section 1682 of this title shall be subject to such judicial review as may

otherwise be provided by law for similar action taken by such department or agency

on other grounds." 20 U.S.C. § 1683. As the text indicates, judicial review is

available to those agency actions taken pursuant to § 1682. *See id.* That does not

apply here given that the undisputed record evidence shows that the Secretary invoked her discretionary authority under 20 U.S.C. § 1226a-1 to change solely the method of payment for the School Boards' federal funds. JA208, JA405.

The second sentence of §1683, which provides a savings clause, provides another pathway to judicial review for funding recipients. It states in relevant part:

> In the case of action, not otherwise subject to judicial review, terminating or refusing to grant or to continue financial assistance upon a finding a failure to comply with any requirement impose pursuant to section 1682 of this title, any aggrieved person . . . may obtain judicial review of such action in accordance with chapter 7 of Title 5, and such action shall not be deemed committed to unreviewable agency discretion within the meaning of section 701 of that title.

20 U.S.C. § 1683. Once distilled to its essence, the School Boards argue that the inclusion of this savings clause authorizes review of any action the Secretary may take. Not so. The savings clause is reserved for any action that terminates or refuses a grant or to continue financial assistance based on a requirement imposed pursuant to § 1682 that is "not otherwise subject to judicial review"—*i.e.*, the express judicial review provision in first sentence of § 1683. *See Texas v. Cardona*, 743 F. Supp. 3d 824, 865 (N.D. Tex. 2024).

But the Secretary has not made any determination that has terminated, refused to grant, or discontinued federal funds to the School Boards; indeed, to accomplish that result, she would have been required to invoke § 1682—which did not happen here. *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 255 (2009) ("[Title IX's]

only express enforcement mechanism, § 1682, is an administrative procedure resulting in the *withdrawal* of federal funding from institutions that are not in compliance." (emphasis added)). To the contrary, in invoking 20 U.S.C. § 1226a-1, the Secretary has only exercised her discretion to alter the method of payment. *See* JA208, JA405. And as the undisputed record reveals, those discretionary determinations "d[id] not freeze or cut off an entity's access to federal funds." JA208, JA405. Even the School Boards acknowledge that their funding has not *actually* been cut off; instead, they contend that there has been a "constructive" termination of their federal funds. Appellants Br. at 19. But whatever a "constructive termination" may be, it is not an *actual* termination, and it remains undisputed that the Secretary did not take any action that led to the termination, refusal, or discontinuation of federal funds to the School Boards. Thus, neither provision authorizing judicial review in § 1683 applies in this case.

The School Boards' argument that judicial review is available to them under 20 U.S.C. § 1683 rests on two incorrect premises. *First*, as noted above, the School Boards erroneously assume that a "constructive" termination or refusal to grant funds is the equivalent of an *actual* termination or refusal to grant funds for purposes of § 1683. Appellants Br. at 18-19. But the statute's plain language does not support that construction. To the contrary, the School Boards' argument requires inserting the word "constructive" into the statutory provision, which only confirms that their

reading is incorrect. *Rotkiskie v. Klemm*, 589 U.S. 8, 14 (2019) ("It is a fundamental principle of statutory interpretation that absent provisions cannot be supplied by the courts." (cleaned up)). Moreover, even the School Boards later concede that this provision is not for constructive terminations or refusals in their discussion of what § 1683 authorizes: "Congress has explicitly provided that the APA is an appropriate mechanism for judicial review of agency actions *terminating or refusing* to grant or continue funding[.]" Appellants Br. at 24 (emphasis added). Considering the text and the School Boards' concession, the School Boards have failed to meet their burden to establish that Congress waived the United States sovereign immunity through § 1682 for claims involving constructive refusals or terminations of federal funds.

*Second*, the School Boards overstate the reach of § 1682. Relying on the phrase "any other means by law," they contend that any action the Secretary takes which effects a Title IX funding recipient is an effort to enforce Title IX. Thus, when the School Boards assert that "enforcement of Title IX flows through § 1682 no matter what other legal authority may apply," Appellants Br. at 19, the School Boards contend that altering the manner in which they receive their Title IX funding is an effort to enforce Title IX pursuant to § 1682. That is not correct. What this second clause of § 1682 concerns is the Secretary's authority to refer "cases to the Attorney General, who may bring an action against the recipient." *Nat'l Black Police*

*Ass'n, Inc. v. Velde*, 712 F.2d 569, 575 (D.C. Cir. 1983) (interpreting Title VI's sister provision, 42 U.S.C. § 2000d-1); *see also United States v. Florida*, 938 F.3d 1221, 1245 (11th Cir. 2019) (explaining that this language is "a phrase that courts have interpreted to permit referral to the Department of Justice for further legal action" (collecting cases)); 34 C.F.R. § 100.8(a) (providing two illustrations of enforcement by "any other means authorized by law"). Any broader understanding of this term runs contrary to the "established practice of construing waivers of sovereign immunity narrowly and in favor of the sovereign," *Lane v. Pena*, 518 U.S. 187, 195 (1996), because the logical conclusion of the School Boards' argument is that *any* action the Secretary may take with respect to funds (final or otherwise) can then be reviewed under this provision. The Secretary's "high-risk" designation authority and authority to select a funding recipient's payment method therefore do not fall within with the scope of § 1682.

Instead, the Secretary's discretionary authority to select a particular payment method for a funding recipient falls under the general authority Congress entrusted to her to steward federal funds, *see* 20 U.S.C. § 1226a-1, which is not a part of her Title IX enforcement authority. Indeed, as the Secretary explained, she took the discretionary actions at issue here as a part of her "fiduciary duty to ensure taxpayer dollars are not being spent on illegal activity." JA193-194, JA266. Further underscoring that her general fiduciary obligations are separate from any Title IX

enforcement is that the regulatory provisions on which the Secretary relied when making the challenged designations of the School Boards as "high risk," 2 C.F.R. §§ 200.208, 3474.10, apply to all "Federal agencies that make Federal awards to non-Federal entities," 2 C.F.R. § 200.101. In other words, nothing about the Secretary's "high-risk" designation and placement on a reimbursement payment method is unique to Title IX enforcement, it is part and parcel of an agency's fiduciary to ensure that federal funds are being used consistent with Congress's stated goals.

### B. The School Boards Have Access to "Judicial Review" if § 1683 Applies Here

Even if § 1683 were somehow to apply to the Secretary's "high risk" designations, the School Boards are incorrect to argue that the District Corut's jurisdictional dismissal precludes them from obtaining any and all "judicial review." The School Boards currently have access to judicial review of their claims as consistently presented in this litigation—in the Court of Federal Claims. To the extent the School Boards would *prefer* a different type of judicial review, its present unavailability stems from their own decisions about the timing and character of their claims. *See Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831 (2002) (noting that Plaintiff is "the master of the complaint").

As the District Court correctly observed, the School Boards requested that the Secretary be ordered to "immediately pay" grant funds, and consistently linked their

requests (ostensibly presented through the APA) to actual funding decisions. JA220-224; JA039; JA256. The District Court correctly held that such claims were, in substance, claims for money damages and were subject to judicial review in the Court of Federal Claims pursuant to the Tucker Act, 28 U.S.C. § 1491(a). JA216-224; *see supra* § I.A. The School Boards' challenge to the Title IX federal spending program "operates much in the nature of a contract." *Litman*, 186 F.3d at 551 (quotation omitted); *Gebser*, 524 U.S. at 286. The Tucker Act provides a waiver of sovereign immunity for "any claim against the United States founded . . . upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). And the "availability of action for money damages under the Tucker Act . . . is presumptively an 'adequate remedy.'" *Telecare Corp. v. Leavitt*, 409 F.3d 1345, 1349 (Fed. Cir. 2005).

Against this backdrop, the School Boards contend they have "no legal path to prevent an unlawful outcome" because the Court of Federal Claims cannot provide "judicial review" as they understand the term. Appellants Br. at 23. To make this argument, the School Boards ignore their requests for immediate payment and instead assert that they seek only prospective injunctive relief, which is proper under the APA. Appellants Br. at 27. Then they argue that the Court of Federal Claims cannot grant injunctive relief because it is not an Article III court. Their construction of "judicial review" is incorrect for several reasons.

42

1. The School Boards' position rests on the assumption that the "judicial review" identified in § 1683 can only by exercised by Article III district courts. As the School Boards acknowledge, Congress has the power to create additional courts—including the Court of Federal Claims—and to define their jurisdiction. Appellants Br. at 23. And it has done so. *See Horne v. Dep't of Agric.*, 569 U.S. 513, 526-27 (2013) ("The Court of Federal Claims has jurisdiction over Tucker Act claims 'founded either upon the Constitution, or any Act of Congress or any regulation of an executive department.'" (quoting 28 U.S.C. § 1491(a)(1))). Consequently, certain claims "must be brought to the Court of Federal Claims in the first instance, unless Congress has withdrawn the Tucker Act grant of jurisdiction in the relevant statute." *Id.* at 527 (citation omitted).

The mere fact that a court was created by Congress pursuant to Article I does not mean that the review those courts provide is not "judicial review." Indeed, the Supreme Court has referred to the actions of Article I courts as "judicial review." *See Hinck v. United States*, 550 U.S. 501, 509 (2007) (referring to the Tax Court's review of claim against the IRS for failure to abate tax penalties as "judicial review"). Like the Court of Federal Claims, the Tax Court is an Article I tribunal, yet—contrary to the School Boards' ostensible position—*Hinck* held that "judicial review" in the Tax Court was the exclusive means for judicial review of the specific claim. *Id.* And the courts have attached the same nomenclature to the type of review

43

exercised by the Court of Federal Claims. *See United States v. Sioux Nation of Indians*, 448 U.S. 371, 406 (1980) (explaining that "[w]hen Congress enacted the amendment directing the Court of Claims to review the merits of the Black Hills claim . . . it only was providing a forum so that a new judicial review of the Black Hills claim could take place"); *Fleming v. United States*, 30 F. App'x 946, 947 (Fed. Cir. 2002) (referring to "judicial review" under the Tucker Act in the Court of Federal Claims); *Dinh v. United States*, 145 F.4th 1316, 1323 (Fed. Cir. 2025) ("[T]he Tucker Act grants the Claims Court jurisdiction to render judgment upon certain claims against the United States. . . .").

More pragmatically, the School Boards fail to identify any compelling reason they could not obtain adequate judicial review in the Court of Federal Claims. The Department is not exempt from the Tucker Act, like other agencies. *Cf. Holbrook*, 48 F.4th at 285 n.1 ("The TVA is explicitly exempt from suit in the Court of Federal Claims. 28 U.S.C. § 1491(c)."). And 20 U.S.C. § 1683 does not withdraw Tucker Act jurisdiction the way other statutes have. *See, e.g.*, *Horne*, 569 U.S. at 527-28 (holding that the Agricultural Marketing Agreement Act of 1937 "withdraws Tucker Act jurisdiction over petitioners' takings claim"). In *Horne*, the relevant statute, among other things, specified the procedural requirements for exhausting a claim and specifically identified the federal district courts as the tribunal in which judicial review could be sought. *Id.* at 527; *see* 7 U.S.C. § 608c(15)(A)-(B) ("The District

Courts of the United States in any district in which such handler is an inhabitant, or has his principal place of business, are hereby vested with jurisdiction in equity to review such ruling . . . ."). No such language is present in § 1683. Where the Department is not exempt from suit under the Tucker Act, and where statutes do not withdraw Tucker Act jurisdiction over the School Boards' claims, there is no obstacle to judicial review in the Court of Federal Claims.

Even if there was some purported defect in the Court of Federal Claims' consideration of the School Boards' requests for immediate payment of its grants from the Department, or "judicial review" is somehow limited to Article III courts, the School Boards would not be precluded from obtaining Article III review. Rather, the School Boards would obtain that review from the United States Court of Appeals for the Federal Circuit, on appeal from any putative adverse judgment from the Court of Federal Claims. *See* 28 U.S.C. § 1295(a)(3); *Brott v. United States*, 858 F.3d 425, 436 (6th Cir. 2017) ("The landowners will ultimately receive judicial review of their claims by an Article III court—the Federal Circuit."). Thus, even if the School Boards were correct that only an Article III court could provide them with judicial review, and their claims are such that they should be heard by an Article III court, the School Boards would still obtain such "judicial review" by pursuing their claims in Court of Federal Claims and appealing to the Federal Circuit.

2. The School Boards' argument that they lack the specific type of judicial review that they seek stems from their litigative choices; namely, their decision to seek premature relief from a decision made by the Secretary under 20 U.S.C. § 1226a-1. As discussed above, *see supra* § II.A, the Secretary's decision under § 1226a-1 is not the same as a decision under 20 U.S.C. § 1682. A decision under § 1226a-1 lacks the finality of a decision under § 1682. Only decisions under § 1682 are potentially reviewable under the APA. Thus, where the School Boards only challenge agency action under § 1226a-1, not § 1682, and purport to bring those claims under the APA, such claims are prudentially unripe. *See Colwell v. Dep't of Health & Hum. Servs.*, 558 F.3d 1112, 1129 (9th Cir. 2009) (holding plaintiffs' APA claim challenging Title VI funding—which had "nearly identical" administrative enforcement provisions to Title IX—was prudentially unripe, where before the funding can be terminated there must be an effort to achieve informal or voluntary compliance, an administrative hearing, and notice to congressional committees). As of now, the only decision the School Boards can try to challenge is the Secretary's discretionary decision under 20 U.S.C. § 1226a-1. The fact that the School Boards must await a decision of the type specified in § 1682 does not mean—as they argue here—that they have been deprived of all judicial review. Their claim seeking payment of their grants is presently reviewable in the Court of Federal Claims, and if the Secretary later makes a decision made reviewable under the APA by §§ 1682

and 1683, they may be able to pursue APA claims concerning those potential future decisions at that later juncture.

Contrary to the School Boards' argument, the Tucker Act does not somehow "yield" when any putative § 1683 claim is yet to be actionable. *See* Appellants Br. at 21. Even assuming arguendo that when an APA remedy is available, it takes precedent over any parallel Tucker Act claim, the School Boards fail to demonstrate why that should occur here, where their APA claims are unripe. *See Tennessee v. Dep't of Educ.*, 104 F.4th 577, 604 (6th Cir. 2024) (quoting 20 U.S.C. § 1683) ("*after* an administrative enforcement proceeding strips the recipient of its funding, the recipient can sue under the APA" (emphasis added)). Insofar as the School Boards have an unadorned claim to compel the Department to pay funds pursuant to a grant—which is all they have at present—such claim is properly heard in the Court of Federal Claims. *See* Appellants Br. at 18 (challenging "improper denial of funds."); 28 U.S.C. § 1491(a).

For similar reasons, the School Boards' reliance on *Bowen v. Massachusetts*, 487 U.S. 879 (1988), is unavailing. In *Bowen*, "[t]he principal question presented . . . [wa]s whether a federal district court has jurisdiction to review a final order of the Secretary of Health and Human Services refusing to reimburse a State for a category of expenditures under its Medicaid program." *Id.* at 882. Here, there has been no final decision to refuse to remit funds upon reimbursement request. The

district court order at issue in *Bowen* did not require that a certain amount to be paid; in direct contrast, here the School Boards seek immediate payment of "presently due" money from the United States. As such, they do not seek merely prospective equitable relief, as they argue. *See* Appellants Br. at 22. Further, although *Bowen* provides that a district court's jurisdiction "is not barred by the possibility" that an order setting aside an agency's action may result in the disbursement of funds, the strong from of its holding—that the APA trumps the Tucker Act in grant reimbursement cases—is undermined by the Supreme Court's more recent decision in *California. Bowen*, 487 U.S. at 910; *see California*, 604 U.S. at 651 (the APA's limited waiver of immunity does not extend to orders "to enforce a contractual obligation to pay money"); *Sustainability Inst.*, 2025 WL 1587100, at *2 (noting that *California* distinguished *Bowen*). Any discussion of *Bowen* at all presumes a ripe APA claim under § 1683, which as discussed above, the School Boards presently lack.

Thus, the School Boards do not lack judicial review of their request for payment. But even if they presently lack judicial review of their purported APA claims at this moment, such conundrum results from their premature rush to court, not any defect in the District Court's decision.

## **<u>CONCLUSION</u>**

Any claim against the federal government "is available by grace and not by right." *United States v. Tohono O'Odham Nation*, 563 U.S. 307, 317 (2011). Thus, when Congress waives the United States' sovereign immunity, the terms of that waiver must be strictly honored. The federal courts are not at "liberty to add an exception to remove apparent hardship." *Id.* (quoting *Keene Corp. v. United States*, 508 U.S. 200, 217 (1993)) (cleaned up). Congress made provision for the School Boards' claims, but because they involve a demand for money damages as part of a contract with the federal government, they belong in the Court of Federal Claims. The federal district courts otherwise lack jurisdiction over them especially when the fail to meet the required conditions for suit under the APA. Accordingly, for all these reasons, the Secretary respectfully requests that this Court affirm the dismissal of the School Boards' Complaints.

Dated: November 19, 2025

STANLEY WOODWARD, JR.
Associate Attorney General

ABHISHEK KAMBLI
Deputy Associate Attorney General

Respectfully Submitted,

LINDSEY HALLIGAN
United States Attorney

_____/s/_____
MATTHEW J. MEZGER
GARRY D. HARTLIEB
Assistant United States Attorneys
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel:   (703) 299-3741
Fax:   (703) 299-3983
Email: Matthew.Mezger@usdoj.gov

*Attorney for Defendants-Appellees*

## <u>CERTIFICATE OF COMPLIANCE</u>

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 13,000 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

This brief contains 12,038 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements Fed. R. App. P. 32(a)(6) because:

This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Times New Roman 14-point font.

_____/s/_____

Matthew J. Mezger
Assistant U.S. Attorney
*Attorney for Defendants-Appellees*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, I electronically filed the foregoing with the

Clerk of the United States Court of Appeals for the Fourth Circuit using the CM/ECF

system, which will send a notice of such filing to all registered CM/ECF users.


_____/s/_____
Matthew J. Mezger
Assistant U.S. Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel:    (703) 299-3741
Fax:    (703) 299-3983
Email: Matthew.Mezger@usdoj.gov

*Attorney for Defendants-Appellees*

DATE: November 19, 2025